[Civ. No. 6171.   Third Appellate District.—July 10, 1939.]

ELEANOR CATHERINE SCOTT, a Minor, etc., Appellant,
v. EARL ROBEY McPHEETERS, Respondent.

Lercara & Nelle and Francis O. Hoover for Appellant.

Griffin & Boone, Thomas C. Boone, Dearing & Jertberg and Hartley F. Peart for Respondent.

THOMPSON, J.—The plaintiff has appealed from a judgment which was rendered against her pursuant to an order sustaining a demurrer to the complaint without leave to amend.

The suit is for damages for alleged malpractice of a physician exercised in the negligent use of metal clamps and forceps incident to the delivery of a child, resulting in serious injuries to the brain cells and spine which caused permanent paralysis. The child is eleven years of age. The action was brought by the mother as guardian *ad litem* for injuries sustained by the child prior to its birth. The mother is not personally a party to the suit. A demurrer to the complaint was sustained on the ground that it fails to state facts sufficient to constitute a cause of action. Judgment was rendered against the plaintiff to the effect that she take nothing by her suit. From that judgment this appeal was perfected.

The theory upon which the trial court sustained the demurrer is that neither the common law nor California statutes authorize the maintenance of a suit by a child for injuries received by it prior to birth. The merits of the appeal rest entirely upon the construction of section 29 of the Civil Code, which provides that:

"A child conceived, but not yet born, is to be deemed an existing person, so far as may be necessary for its interests in the event of its subsequent birth."

It is strenuously insisted, in support of the judgment, that the word "interests", as that word is used in the preceding section, is limited in its application, and excludes the right to maintain an action for tort committed upon a child before its birth. We think not.

Section 376 of the Code of Civil Procedure authorizes a father or a mother to maintain an action for the injury or death of a minor child caused by the wrongful act or neglect of another person. The statute of limitations does not run against such an action until the child arrives at the age of majority. (Sec. 352, subd. 1, Code Civ. Proc.). Clearly a suit for injuries wrongfully inflicted upon an unborn child by the negligent acts of another person will lie subsequent to its birth, under the provisions of section 29 of the Civil Code, provided compensation for a tort may be considered to be within the "interests" of the child as that term is employed in the above section of the code.

Much space is devoted in the briefs to an effort to apply the ordinary rules of construction of a statute to the meaning of section 29. Those rules are applicable only when the language of a statute is uncertain and ambiguous. There appears to be no language in that section which is uncertain or ambiguous. It seems to be as clear and concise as the English language could make it. It says that an unborn child which has been conceived is deemed to be "an existing person" when that assumption is necessary "for its interests", in the event of its subsequent birth. There appears to be no reason for confining the word "interests" to the child's right of inheritance or to its property rights. Clearly the word is general in its application and includes both personal and property rights. It must mean more than the right of inheritance, for sections 90 and 91 of the Probate Code expressly provide for the right of a pretermitted heir to inherit property. We assume the word "interests" is used in section 29 in the general sense of anything that is profitable or beneficial to the child. In Black's Law Dictionary, third edition, 996, the term is defined as "a right to have the advantage accruing from anything." All standard dictionaries include in the definition of the word "an advantage, profit or benefit" in any property, enterprise or thing. That includes benefits or rights flowing from real or personal property or from choses in ac-

tion. With respect to property, it is said in 50 Corpus Juris, page 736, section 7:

"Generally, the subjects of property comprise all valuable rights or interests protected by law. . . . In the broad sense of the term, 'property' includes . . . choses in action. . . . In modern legal systems, property includes practically all valuable rights. The term is indicative and descriptive of every possible interest which a person can have, extends to every species of valuable right or interest, and comprises a vast variety of rights. The right to be protected in a person's privileges belonging to him as an individual or secured to him as a member of the commonwealth is property, as is any valuable interest in or to any object of value that a person may lawfully acquire or hold."

That definition certainly includes the right to compensation for personal injuries wrongfully inflicted by the wilful or negligent acts of another person. The Supreme Court in the case of *Daubert* v. *Western Meat Co.,* 139 Cal. 480 [69 Pac. 297, 73 Pac. 244, 96 Am. St. Rep. 154], seems to concede that section 29 includes both personal and property rights. At least no attempt was made in that case to limit the application of the word "interests". Mr. Justice Beatty expressly construes the word to include the very rights which are claimed in this action. In fact, he extends its application much further than is necessary in the present case. But there is no room for technical rules of construction in this case.

It is urged that section 29 should be construed to be a mere continuation of the common law with respect to the rights of an unborn child. We cannot agree to that assertion. Section 5 of the Civil Code declares that:

"The provisions of this code, *so far as they are substantially the same* as existing statutes or *the common law,* must be construed as continuations thereof, and not as new enactments."

At common law, the weight of authority holds that an unborn child, in contemplation of law, has no existence as a human being separate from its mother, and that it therefore has no right of action for personal injuries inflicted upon it prior to its birth, by the wrongful conduct of another. Section 29 of the Civil Code is diametrically opposed to that theory, for it declares that for certain specified pur-

poses the unborn child shall be deemed to be *an existing person*. Since our statute considers an unborn child an existing person, section 376 of the Code of Civil Procedure authorizes its father or its mother, after the birth of the child, to maintain an action for injury sustained by it through the wrongful act or neglect of another person. Certainly that radical change from the rule of the common law may not be deemed to be a continuation thereof, for the opposing principles are in no way similar. It is only when they are "substantially the same" that section 5 of the Civil Code declares that one shall be presumed to be a continuation of the other.

We have been interested and instructed by excellent briefs which have been filed by the respective parties to this action. British and Irish cases have been cited. The common law of England, the civil law of Rome, Blackstone and numerous cases from several states of this country have been industriously analyzed. Able dissenting opinions are elaborately quoted. It is apparent there has been a serious conflict over the mooted question as to whether an action lies either by a parent or by a subsequently born child for injuries sustained by the child prior to its birth, as a result of wrongful or negligent acts of another person. We have examined the cases cited, together with every other one on that subject which we were able to find. We are satisfied the weight of authority determines that such an action for injury to an unborn child does not lie at common law. We are also convinced that the common law rule in that regard has been accepted in several of the jurisdictions of the United States where no statute to the contrary exists. No case has been cited in this country or elsewhere in which statutes similar to those in question have been involved. In truth, many of the cases are specifically based on the absence of statutes regarding that subject, and they intimate or plainly state that such a rule may be authorized by statute. In none of the cases relied upon by this respondent was a statute similar to that of California involved. The preliminary paragraph to the annotations on that subject found in 97 American Law Reports, at page 1524, indicates the recognition of that limitation to the declared rule. It reads:

"While there is some difference of opinion in the decisions rendered since the date of publication of the original anno-

tation as to whether a child or its personal representative may, *in the absence of statute,* maintain an action in damages for prenatal injury, a majority of the decisions support the rule denying the existence of such a right.'' (Citing authorities.)

The same limitation of that rule is recognized in the case of *Drobner* v. *Peters,* 232 N. Y. 220 [133 N. E. 567, 20 A. L. R. 1503], upon which this respondent strongly relies. In that case a pregnant mother fell into an open coal chute, seriously injuring her child, which was prematurely born eleven days later. In a subsequent suit for damages for injuries to the unborn child, the New York court denied relief. Mr. Justice Cardozo dissented. The decision was based on the absence of a statute upon that subject. The court said in that regard:

''May this court attach an unnatural meaning to simple words, and hold, *independently of statute,* that a cause of action for prenatal injuries is reserved to the child until the moment of its birth, and then accrues?''

In the leading Irish case of *Walker* v. *Great Northern Ry. Co. of Ireland,* 28 L. R. (Ire.) 69, a mother brought suit for damages for injuries sustained by her unborn child as the result of a railway accident while the mother was riding in a passenger car. In denying relief in that case the court said:

''If new rights and engagements are to be created, *that is the province of legislation, and not of decision.''*

The respondent asserts that the provisions of section 29 of the Civil Code are based on a fiction of law to the effect that an unborn child is a human being separate and distinct from its mother. We think that assumption of our statute is not a fiction, but upon the contrary that it is an established and recognized fact by science and by everyone of understanding. That theory of a fiction is forcefully answered by the able, dissenting opinion of Mr. Justice Boggs in the case of *Allaire* v. *St. Luke's Hospital,* 184 Ill. 359 [56 N. E. 638, 75 Am. St. Rep. 176, 179, 48 L. R. A. 225], as follows:

''If . . . (the unborn child) reaches that prenatal age of viability when the destruction of the life of the mother does not necessarily end its existence also, and when, if separated prematurely and by artificial means from the mother, it would be so far a matured human being as that it would live and grow, mentally and physically, as other children gen-

erally, it is but to deny a palpable fact to argue there is but one life. . . . If at that period a child so advanced is injured in its limbs or members and is born into the living world suffering from the effects of the injury, is it not sacrificing truth to a mere theoretical abstraction to say the injury was not to the child but wholly to the mother? . . . Should compensation for his injuries be denied on a mere theory, known to be false, that the injury was not to his person but to the person of the mother? The law should, it seems to me, be, that whenever a child *in utero* is so far advanced in prenatal age as that, should parturition by natural or artificial means occur at such age, such child could and would live separable from the mother and grow into the ordinary activities of life, and is afterward born and becomes a living human being, such child has a right of action for any injuries wantonly or negligently inflicted upon his or her person at such age of viability, though then in the womb of the mother.''

It is common knowledge that when a child's lungs and organs are fully developed, even in a seven-months baby, it is frequently capable of living and that it actually exists as a human being separate and distinct from its mother, even though it is prematurely born by artificial means or by accident. Who may say that such a viable child is not in fact a human being in actual existence?

In truth, in applying the common law rule, that in the absence of statute, an action for injuries to an unborn child will not ordinarily lie, a distinction has often been drawn between an unborn child whose lungs and other organs are fully developed so that it is capable of living separate and apart from its mother, and those babies which are less developed. In the case of *Lipps* v. *Milwaukee Elec. Ry. & Light Co.,* 164 Wis. 272 [159 N. W. 916, L. R. A. 1917B, page 334], the mother of a child was denied relief in an action for injuries received by her and by her five-months unborn child, on the ground that the infant was not then viable and could not have then existed separate and apart from its mother. The court specifically based its opinion on that doctrine and limited its application to those facts. It is said in that regard:

''The complaint alleges that the child could not have been born viable. Since a nonviable child cannot exist separate from its mother, it must, in the law of torts, be regarded as a

part of its mother, and hence, being incapable of a separate existence, it is not an independent person or being to whom separate rights can accrue. Its rights are merged in those of the mother of whom it forms a part.

"We go no further than the facts of the case require, and hold that no cause of action accrues to an infant *en ventere sa mere* for injuries received before it could be born viable.

"Very cogent reasons may be urged for a contrary rule where the infant is viable, and especially so in cases where the defendant, being a doctor or midwife, has negligently injured an unborn child. As to such cases we express no opinion."

In the present case there can be no doubt the child was viable and capable of existing separate and apart from its mother at the time of the alleged injury to it. It was fully developed in every respect. The injuries were alleged to have occurred in the very process of delivering the child.

In the case of *Magnolia Coca Cola Bottling Co.* v. *Jordan*, 124 Tex. 347 [78 S. W. (2d) 944, 97 A. L. R. 1513], upon which the respondent relies, a judgment which was rendered in a suit by the parents of an unborn child for injuries to both the mother and the child as a result of an automobile collision, from which injuries the child died nineteen days after its birth, was reversed on the ground that Texas has no statute on the subject and under the common law rule the child could not have maintained the action if it had lived. In determining the appeal the court quoted with approval from the Walker case, *supra*, to the effect that a rule which would allow a child to maintain an action of personal injuries sustained before its birth would be attended with serious difficulty in proving that the injuries were inflicted through wanton or negligent acts of a tort-feasor. The court quoted in that regard:

"Justice O'Brien . . . said, 'The pity of it is as novel as the case—that an innocent infant comes into the world with the cruel seal upon it of another's fault, and has to bear a burden of infirmity and ignominy throughout the whole passage of life. . . .

" 'But there are instances in the law where rules of right are founded upon the inherent and inevitable difficulty or impossibility of proof. And it is easy to see on what a boundless sea of speculation in evidence this new idea would launch us. What a field would be open to extravagance of

testimony, already great enough—if science could carry her lamp, not over certain in its light where people have their eyes, into the unseen laboratory of nature—could profess to reveal the causes and things that are hidden there. . . . But it is also a landmark that forbids advance on defined rights and engagements; and if these are to be altered, if new rights and engagements are to be created, *that is the province of legislation and not of decision.*' ''

In the present case, however, we are not confronted with the weight or sufficiency of evidence to prove the necessary facts to justify a recovery by a child who claims to have been wrongfully injured at birth. It would seem to us inhuman and an acknowledgment of inherent weakness of the law to deny a remedy to one who is condemned to contend with the struggles of life in a maimed and crippled condition due to the wanton or negligent acts of another person. The difficulty of obtaining proof of the wrong should prompt greater leniency in affording the remedy, rather than a denial of plain justice. We are not impressed with the reasoning that a clear remedy for an injustice should be denied because the wrong is not readily susceptible of proof. Law is progressive and should lend its aid to secure justice rather than to block it. (*Katz* v. *Walkinshaw*, 141 Cal. 116, 123 [70 Pac. 663, 74 Pac. 766, 99 Am. St. Rep. 35, 64 L. R. A. 236].)

On the title page of every volume of Corpus Juris, this appropriate quotation is printed from an opinion rendered by Chief Justice Greene in 1 R. I., page 356:

''The law is progressive and expansive, adapting itself to the new relations and interests which are constantly springing up in the progress of society.''

To the foregoing quotation we might presume to add that the law should endeavor to keep abreast with the marvelous developments of science and the rapidly-changing conditions of the world. Precedents are valuable so long as they do not obstruct justice or destroy progress.

We do not even suggest the defendant in this case is guilty of malpractice. Mere mistakes in the judgment of a physician do not constitute malpractice. It may be true that the defendant made no mistake in the delivery of the child in this case. It may be true that it is impossible to satisfactorily prove that his conduct contributed in any degree to

the unfortunate condition of the child. But that should not deprive one of the right to pursue a remedy for an assumed wrong.

In the case of *Daubert* v. *Western Meat Co., supra,* section 29 of the Civil Code was construed by the late Chief Justice Beatty, for whose judgment we have great respect. To be sure, his construction of that section appears in a dissenting opinion, but it is robbed of none of its force or logic on that account, for there is no statement in the opinion of the court in conflict with that feature of the case. That is the only case in which the construction and effect of section 29 has been considered by the Supreme Court. In that case a demurrer to a complaint was sustained without leave to amend. The judgment which was accordingly rendered was affirmed on appeal. The complaint alleged that Otto Daubert was killed through the negligence of the Western Meat Company. His wife previously brought suit for damages for his death under section 377 of the Code of Civil Procedure, and recovered a judgment of $5,000. She was then the mother of an unborn child, the existence of which the defendant had no knowledge, and was therefore not guilty of failing to ask that the child be joined as a necessary party to the suit. After the birth of the child, and after the judgment which was procured by her mother had become final, the child brought a separate suit for damages for the loss of her father. The opinion of the court specifically states that it refrains from deciding whether the child could maintain such an action if "the existence of an unborn child *was known to the defendant* at the time of the previous action and trial". In a concurring opinion by Mr. Justice Henshaw, it is made very clear that the judgment was affirmed on the ground that since such an action *for the wrongful death of a person,* under section 377 of the Code of Civil Procedure must be brought by *"his heirs* or personal representatives", in the absence of knowledge of the existence of an unborn heir, a suit for damages by one or more heirs must be deemed to include "all of the heirs", and under such circumstances a defendant may not be harassed, and mulcted a second time for damages, for failure on the part of the plaintiff to include all the heirs. He says in that regard:

"Our law contemplates that an action for a recovery in a case such as this may be brought either by the personal repre-

sentative or by *all the heirs*. In the nature of things, where a pleading expresses the fact that the action is so brought by and on behalf of all the heirs, it is not expected that the defendant can or will controvert such an allegation, except upon the rare chance that he may happen to know of some heir unmentioned and omitted. Otherwise, he is entitled to rest without denial upon the allegation of the complaint, *secure in his right to be subjected to the harassment of but one action, and, should recovery be had against him, to go free from further vexation and from being mulcted a second time by payment of the amount of this judgment.*"

It thus appears that the Daubert case was decided solely on the ground that a defendant could not be twice harassed by suits for the same alleged tort under section 377 of the Code of Civil Procedure, when the original complaint under which judgment was recovered, alleges that it was brought by and on behalf of "all heirs", since the defendant had no knowledge there was in existence an unborn child. There is no intimation in that case in conflict with what Mr. Justice Beatty has so clearly and forcefully stated with respect to the application of section 29 of the Civil Code under circumstances such as exist in the present action. The clear inference is that the mother might have joined the child as a plaintiff in the original suit, after its birth, and that it might have then recovered judgment for its damages.

He construed section 29 to confer upon an unborn child, in the event of its subsequent birth, the right to maintain an action for personal injury sustained through a tort when that privilege was not barred or waived. His construction of that section, under such circumstances, is not challenged by the other members of the court. His reasoning is logical and persuasive. He emphatically asserts the language of the section is too clear for controversy. He says in part:

"Neither the first nor the final opinion quotes the language of section 29 of the Civil Code or makes any attempt to show how it can be construed *to mean the exact opposite to what it plainly says* (quoting the section). . . .

"*Why does not this plain declaration of the statute place a posthumous child upon the same footing with a living child* with respect to an action under section 377 of the Code of Civil Procedure? If it would ever be necessary for the *interests* of a living child to prosecute a separate action after a

recovery by its mother, how can it be less the interest of a posthumous child to prosecute the action? Is it again denied that the posthumous child is heir to its father? Has it less *interest in the amount recoverable* as compensation for the loss of family support? Is it better able than a living child to intervene in the first action? Is there some ground of estoppel against it that could not be urged against the suit of the living child? Is he participant of his mother's fraud in concealing his existence? . . .

"If the defendant failed to make the objection in either mode that there was a nonjoinder of necessary parties plaintiff, *and suffered a recovery by a part of those entitled to sue,* he could not resist a recovery in a subsequent action by the other heirs of their share of the damages, unless he could show that the plaintiffs in the second action were estopped by some fraud or laches on their part."

The reasoning of the eminent chief justice is unanswerable. The judgment in that case was affirmed on the theory that since the complaint specifically alleged that the cause was brought in behalf of "all the heirs", and that defendant had no knowledge of the existence of an unborn heir he could not be again harassed by another suit or mulcted in further damages for the fraud or neglect of the plaintiff in the original action. The fact that this reasoning occurs in a dissenting opinion, which does not controvert the decision of the court in any respect, does not detract from its logical force or value.

The judgment is reversed and the court is directed to overrule the demurrer and permit the defendant to answer.

Pullen, P. J., and Tuttle, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 7, 1939, and the following opinion then rendered thereon:

THE COURT.—The petition for a hearing is denied. In denying said petition, we expressly withhold our approval of that portion of the opinion found in the first two sentences of the fifth paragraph thereof, which portion seems to deal with the time when the statute of limitations would begin to run on an action which might be maintained by a father or mother in his or her own right under section 376 of the Code

of Civil Procedure. This is not such an action but is an action brought by the child. The portion of the opinion above referred to was not therefore necessary to the decision and it does not affect the soundness of the conclusion reached by the District Court of Appeal.

HOUSER, J., Dissenting.—I dissent.

Since according to my interpretation of the constitutional powers conferred upon this court,—on the hearing of a petition for the hearing of a cause after decision has been had therein by the District Court of Appeal,—no authority exists in this court other than either to grant or to deny such petition, I am constrained to dissent from that part of the foregoing order which in effect modifies the judgment that was rendered by the District Court of Appeal. (*Wires* v. *Litle*, 27 Cal. App. (2d) 240, at p. 245 [80 Pac. (2d) 1010, 82 Pac. (2d) 388].)