[No. A039721. First Dist., Div. Three. Aug. 11, 1989.]

LINDA MARIE BELL et al., Plaintiffs and Appellants, v. MACY'S CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Kenneth D. Schnur and Larry Lockshin for Plaintiffs and Appellants

Gerald Z. Marer, John F. Schuck, Alan G. Marer and Marer, Marer & Schuck for Defendant and Respondent.

**OPINION**

**BARRY-DEAL, J.**—This is an appeal by a deceased infant, Manuel Robert Freytes (Baby Freytes), through his guardian ad litem, and by his parents, Manuel Freytes, Jr. (Freytes), and Linda Marie Bell (Bell) (collectively, appellants). All appeal from summary judgment in favor of respondent Macy's California, a division of R.H. Macy & Company, Inc. (Macy's). Appellants contend that the trial court erred when it found that all their claims were barred by the exclusive remedy provisions of the workers' compensation statutes (Lab. Code, § 3200 et seq.),[1] and that by virtue of that finding, no material issues of fact remained for trial. (Code Civ. Proc., § 437c, subd. (c).) We affirm.

*Facts*

The parties do not dispute the essential facts, and we summarize them here.

Appellant Bell was a clerical employee of Macy's. On the morning of September 9, 1981, at the end of her morning rest break, she began to feel severe abdominal pain. She was seven months pregnant. She returned to her office, where she told coworker Barbara Baptista that she was not feeling well and asked her to call the nurse. Baptista called Maxine Guthrie, a full-time nurse whom Macy's employed to staff a small dispensary and to provide first aid to employees and customers. Ten or fifteen minutes later, Guthrie arrived at Bell's office. She asked Bell to describe her symptoms, and told Bell that she was having gas pains, and to sit back and relax. Bell's condition did not improve, and Guthrie took her to the dispensary in a

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

wheelchair. On the way to the dispensary, Bell asked Guthrie if she could see a doctor, and Guthrie assured her that she did not need one. Guthrie had her lie down at the dispensary, but Bell continued to feel abdominal pain. Meanwhile, Baptista had called Bell's husband, Freytes. After Bell had been in the dispensary for about 20 minutes, he arrived. With some reluctance and on Freytes's urging, Guthrie finally called an ambulance for Bell. Some 50 minutes after Bell first began to feel sick, the ambulance arrived and took her to San Francisco General Hospital. The hospital staff determined that Bell had suffered a ruptured uterus. Baby Freytes was delivered by Caesarean section with significant brain and other damage, and died aged two years and four months. There was evidence before the trial court that the delay between the onset of Bell's symptoms and her arrival at the hospital caused significant injury to Baby Freytes that would not have occurred had Bell received prompt treatment. Reading the affidavits and other matter in the light most favorable to appellants, we assume for the purposes of this appeal that the delay caused injury to Baby Freytes. (*Levin* v. *State of California* (1983) 146 Cal.App.3d 410, 414 [194 Cal.Rptr. 223] [stating standard of review].) The parties assume that Bell's ruptured uterus was unrelated to her employment save only that it occurred during working hours and on Macy's premises.

Bell, Freytes, and Baby Freytes brought actions against Macy's. Freytes and Bell sued for the wrongful death of Baby Freytes. Baby Freytes brought a survivor's action by guardian ad litem Freytes. (Prob. Code, § 573, subd. (a); Code Civ. Proc., § 377, subd. (a).) Bell brought a personal injury action on her own behalf. Finally, Freytes sued for emotional distress caused by his observation of the treatment of Bell's condition by Guthrie. After several demurrers and amendments, Macy's brought a motion for summary judgment in its favor, arguing that all the claims against it were barred by the exclusive remedy provisions of the workers' compensation law. The motion was granted, and the finding of the court in favor of Macy's was reaffirmed on reconsideration of additional affidavits submitted by appellants.

## Discussion

This case presents two questions. First, we must decide whether California's pre-1982 dual capacity doctrine applies to this case, and second, we address the novel and difficult question whether an unborn child is limited to the workers' compensation remedy when an employer's negligent conduct towards its employee causes injury to the fetus. Because we must read the facts in favor of appellants and against respondent, we assume for the purposes of this discussion that the failure to treat Bell's condition promptly was negligence chargeable to Macy's which caused injury to Baby Freytes.

We find that the dual capacity doctrine does not apply in this case, and that the injury to the fetus of the employee mother is a compensable event which limits the child's remedy to such workers' compensation benefits as may be available. We therefore affirm the judgment.

When the conditions of compensation exist, an injured worker's exclusive remedy is the compensation available under the Workers' Compensation Act. (§§ 3600, 3601; *Dixon* v. *Ford Motor Co.* (1975) 53 Cal.App.3d 499, 502-503[125 Cal.Rptr. 872].)[2] Those conditions exist where the injury arises out of and in the course of employment, and is proximately caused by the employment. (*Ibid.*) ■ Once it is established that an injury arose out of and in the course of employment, "[a]ll that is required is that the employ-

---

[2] We apply the Labor Code as it existed at the time of the injury, for the reasons discussed at footnote 3, *post.* When appellants' injuries accrued, section 3600 read, in pertinent part, as follows: "Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as provided in Section 3706, shall, without regard to negligence, exist against an employer for any injury sustained by [its] employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur: [¶] (a) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division. [¶] (b) Where, at the time of the injury, the employee is performing service growing out of and incidental to his [or her] employment and is acting within the course of his [or her] employment. [¶] (c) Where the injury is proximately caused by the employment, either with or without negligence. . . ." (Stats. 1978, ch. 1303, § 5, p. 4262.)

When appellants' injuries accrued, section 3601 read as follows: "(a) Where the conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this division is, except as provided in Section 3706, the exclusive remedy for injury or death of an employee against the employer or against any other employee of the employer acting within the scope of his [or her] employment, except that an employee, or his [or her] dependents in the event of [the employee's] death, shall, in addition to the right to compensation against the employer, have a right to bring an action at law for damages against such other employee, as if this division did not apply, in the following cases: [¶] (1) When the injury or death is proximately caused by the willful and unprovoked physical act of aggression of such other employee. [¶] (2) When the injury or death is proximately caused by the intoxication of such other employee. [¶] (3) When the injury or death is proximately caused by an act of such other employee which evinces a reckless disregard for the safety of the employee injured, and a calculated and conscious willingness to permit injury or death to such employee. [¶] (b) An act which will not sustain an independent action for damages against such other employee under subsections (1), (2), or (3) of subdivision (a) of this section may nevertheless be the basis of a finding of serious and willful misconduct under Section 4553 or 4553.1, if (1) such other employee is established to be one through whom the employer may be charged under Section 4553; (2) such act of such other employee shall be established to have been the proximate cause of the injury or death; and (3) such act is established to have been of a nature, kind, and degree sufficient to support a finding of serious and willful misconduct under Section 4553 or 4553.1. [¶] (c) In no event, either by legal action or by agreement whether entered into by such other employee or on his [or her] behalf, shall the employer be held liable, directly or indirectly, for damages awarded against, or for a liability incurred by such other employee under subsections (1), (2), or (3) of subdivision (a) of this section. [¶] (d) No employee shall be held liable, directly or indirectly, to his [or her] employer, for injury or death of a coemployee except where the injured employee or his [or her] dependents obtain a recovery under subdivision (a) of this section." (Stats. 1959, ch. 1189, § 1, pp. 3275-3276.)

ment be one of the contributing causes without which the injury would not have occurred. [Citation.]" (*Wickham* v. *North American Rockwell Corp.* (1970) 8 Cal.App.3d 467, 473 [87 Cal.Rptr. 563].) The facts leading to a finding of exclusivity are to be liberally construed, even where the employee, in an effort to escape the limited but relatively certain compensation remedy in favor of a riskier but more lucrative tort claim, attempts to show that his or her injury is not compensable. (§ 3202; *Eckis* v. *Sea World Corp.* (1976) 64 Cal.App.3d 1, 6 [134 Cal.Rptr. 183].) Moreover, once the conditions of compensation under section 3600 are met, the fact that no benefits are available for the kind of injury suffered does not affect the exclusivity of the compensation remedy. (*Seide* v. *Bethlehem Steel Corp.* (1985) 169 Cal.App.3d 985, 991 [215 Cal.Rptr. 629]; and see 2A Larson, Workmen's Compensation Law (1988) §§ 65.50-65.52, pp. 12-49 - 12-61.) Appellants seek to establish that their injuries were caused by Macy's negligence towards its employee, Bell, and at the same time to avoid the exclusive remedy provisions of the Labor Code by establishing that no compensable injury occurred.

Bell was injured while at her place of work, during working hours. It is true that she was not, strictly speaking, engaged in work prescribed by her employer. ■■ However, it is established that injury to an employee caused by improper treatment at a clinic provided by the employer and dedicated to serving employees is within the compensation scheme. (*Deauville* v. *Hall* (1961) 188 Cal.App.2d 535, 545-546 [10 Cal.Rptr. 511] [first aid by employer]; *Dixon* v. *Ford Motor Co., supra,* 53 Cal.App.3d at pp. 504-505 [failure to care properly for heart attack victim at company clinic].) Such treatment falls into a residual category of cases in which an employee is injured while engaged in conduct that is not for the benefit of the employer, but is "an incident of employment provided for [the employee's] own benefit. [Citation.]" (*Wickham* v. *North American Rockwell Corp., supra,* 8 Cal.App.3d at p. 472.) The record reveals and appellants concede that attendance at the company clinic was normal practice for employees too unwell to do their job. ■■ Though the determination that a particular activity is sufficiently work-related to satisfy the conditions of coverage is a factual inquiry, "when the facts are undisputed and all point in the same direction, resolution of the question becomes a matter of law. [Citations.]" (*Eckis* v. *Sea World Corp., supra,* 64 Cal.App.3d at p. 7.) ■■ Based on the undisputed facts, we find that the trial court's implicit determination that Bell's visit to the company clinic arose out of and in the course of her employment was correct.

■■■■ ■■ Appellants contend that even if the conditions of compensation are facially present, the so-called dual capacity exception

applies.[3] They argue that because the services of the Macy's nurse were available to the public as well as to employees, Macy's was in the business of providing first aid to the public. Drawing an analogy to the leading case of *Duprey* v. *Shane* (1952) 39 Cal.2d 781 [249 P.2d 8], they claim that Macy's treatment of Bell was provided to Bell in the same manner as it might have been provided to any member of the public, and conclude that Macy's and Bell had stepped out of the ordinary employer-employee relation.

■ *Duprey* v. *Shane, supra,* 39 Cal.2d 781, established the rule that where an employer acts in a legal capacity which is conceptually distinct from that of employer, and, while so acting, injures an employee, the conditions of compensation do not exist, and the employee may bring a civil action for damages. (*Id.,* at p. 793.) In *Duprey,* plaintiff, a nurse, was injured when her physician-employer treated her for a job-related injury and botched the job. (*Id.,* at pp. 785-789.) The court held that the employer had two legal capacities, one of which was as a purveyor of medical services to the public. (*Id.,* at p. 793.) Because the injured employee had been treated as though a member of the public, the conditions of compensation were not met. The employee was therefore not restricted to workers' compensation benefits. (*Ibid.*) The *Duprey* principle was followed where similar circumstances existed. (See, e.g., *Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d 268, 279 [179 Cal.Rptr. 30, 637 P.2d 266] [route gas salesman injured by flammable gas fire resulting from employer's defective product]; *D'Angona* v. *County of Los Angeles* (1980) 27 Cal.3d 661, 664 [166 Cal.Rptr. 177, 613 P.2d 238] [physical therapist elected treatment in the employing hospital for work-related disease]; *Perry* v. *Heavenly Valley, supra,* 163 Cal.App.3d at pp. 498-499 [ski instructor injured when coemployee negligently mounted bindings supplied at employer's ski shop]; contra *Dixon* v. *Ford Motor Co., supra,* 53 Cal.App.3d at pp. 506-507 [rejecting application of dual capacity doctrine where treatment was received at employer-provided clinic].)

■ Appellants contend that because Macy's offered the services of its nurse to members of the public who required first aid while at Macy's store, this case is distinguishable from *Dixon* and similar cases in which the employee clinic was for employees only. We do not find the distinction controlling. Bell attended the clinic as an employee, not as a member of the public. Even if we assume that the clinic was a valued part of Macy's

---

[3] In 1982, the Legislature amended Labor Code section 3602 to abolish the dual capacity doctrine except as allowed by statute. (See Stats. 1982, ch. 922, § 6, p. 3367, eff. Jan. 1, 1983.) The exceptions are not relevant, and the acts that injured appellants occurred well before the effective date of the statute. We therefore apply California law as it existed before the Legislature acted. (*Perry* v. *Heavenly Valley* (1985) 163 Cal.App.3d 495, 505 [209 Cal.Rptr. 771] [holding that Lab. Code, § 3602 should not be applied retroactively]; and see *Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 153 [233 Cal.Rptr. 308, 729 P.2d 743].)

services to its customers, as appellants urge us to do, there is no showing or claim that Bell intended to attend the clinic in that capacity, or, more importantly, that she was treated as such. ■ Where an employee is injured in the course of employment, it is irrelevant to the application of the conditions of compensation that the same injury might have occurred outside the course of that employment. (Cf. *Robbins* v. *Yellow Cab Co.* (1948) 85 Cal.App.2d 811, 812-813 [193 P.2d 956] [off-duty employee returning to pick up paycheck not acting in course of employment and therefore not within conditions of compensation].) In the absence of any indication that Macy's and Bell stepped out of their roles as employer and employee, we decline to apply the dual capacity rule to this case.

■ We now turn to the more difficult of the two questions facing us. While it is clear that any injury to Bell was compensable and therefore within the exclusive jurisdiction of the Workers' Compensation Appeals Board, it is apparently an open question whether injury to her then-unborn fetus should be within the compensation remedy. We find that any injury to Baby Freytes was derived from the compensable injury to Bell and is barred by the workers' compensation scheme.

It is established in California, as it is in the majority of jurisdictions, that a negligent or intentional injury to an unborn child gives rise to an action in tort by the child. (Civ. Code, § 29; *Scott* v. *McPheeters* (1939) 33 Cal.App.2d 629, 637 [92 P.2d 678]; and see Annot. (1971) 40 A.L.R.3d 1222 [collecting cases].) While problems of causation and damage may exist, the right of action in the child is uncontradicted. Thus, had the injury in this case occurred outside the employer-employee context, there would be no question that Baby Freytes's action would be permitted under general tort principles. ■ Even within that context, the liability of employers to children injured while visiting their parents at work has been treated as a branch of the law of premises liability, and we have found no indication that any employer has attempted to restrict the recovery of the child to workers' compensation benefits. (See, e.g., *Lindholm* v. *Northwestern Pac. R. R. Co.* (1926) 79 Cal.App. 34, 36-37 [248 P. 1033] [plaintiff injured while visiting employee "relative"]; *Herold* v. *P. H. Mathews Paint House* (1919) 39 Cal.App. 489, 491-492 [179 P. 414] [wife visiting employee husband]; see Annot., Duty to Employee's Visitor (1964) 94 A.L.R.2d 6; and cf. *Robbins* v. *Yellow Cab Co., supra,* 85 Cal.App.2d at pp. 812-813.) Under modern principles of premises liability, the obligations of the employer to the child of the employee would be determined under generally applicable tort law (see, e.g., *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 118-119 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]), and the child's action would not be subject to the exclusive remedy of the workers' compensation law. At first glance, there should be no logical difference between these cases and those

in which the child is injured *in utero*. The fetus remains a separate person who is not an employee, and retains its own right of action.[4]

However, in some circumstances, an injury to the child or other relative of an employee would fall within the compensation scheme. ██ For example, where the relative is a witness to the gruesome injury or death of the employee, there is no recovery for the resulting mental distress, even though the injury to the relative does not, strictly speaking, satisfy the conditions of compensation. (*Williams* v. *Schwartz* (1976) 61 Cal.App.3d 628, 630-632 [131 Cal.Rptr. 200] [wife's action for mental distress barred by exclusive remedy provisions]; cf. *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 746-747 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316] [establishing right of action].) The mental injury to the relative of the employee derives from the employee injury and is therefore restricted by the compensation law. ██ Thus, where the injury to the employee results in a loss of consortium or services to his or her spouse, the spouse has no independent civil action against the employer. (*Cole* v. *Fair Oaks Fire Protection Dist., supra,* 43 Cal.3d at pp. 162-163; *Williams* v. *State Compensation Ins. Fund* (1975) 50 Cal.App.3d 116, 123 [131 Cal.Rptr. 200]; *Gillespie* v. *Northridge Hosp. Foundation* (1971) 20 Cal.App.3d 867, 870 [98 Cal.Rptr. 134].) This rule applies the exclusive remedy even while recognizing that the right of action in the relative is independent of any belonging to the injured worker, and ordinarily could be pursued whether or not any action was prosecuted by the worker. (*Williams* v. *Schwartz, supra,* 61 Cal.App.3d at p. 632.) The rule has its farthest extension in *Salin* v. *Pacific Gas & Electric Co.* (1982) 136 Cal.App.3d 185 [185 Cal.Rptr. 899], in which the employee, driven insane by job-related stress, shot and killed his children. (*Id.,* at p. 189.) The employee brought a wrongful death action, and the court held that the action was barred under the exclusive remedy provisions of the workers' compensation statutes. (*Id.,* at p. 193.) The court reasoned that the employee had no better rights than his daughters would have had if they had survived their father's attack, and that because their deaths were "due to [the employee's] employment-related mental condition, *they* would have

---

[4]We have found only four cases which address this problem. (*Adams* v. *Denny's Inc.* (La.App. 1985) 464 So.2d 876, 877 [55 A.L.R.4th 787], writ of review den. (1985) 467 So.2d 530 [miscarriage not an "injury" within compensation statute; wrongful death action allowed]; *Witty* v. *American Gen. Capital Distributors* (Tex.App. 1985) 697 S.W.2d 636, 640-641, reversed *sub nom. Witty* v. *American Gen. Capital Dist., Inc.* (Tex. 1987) 727 S.W.2d 503, 506 [assuming fetus a third party and allowing damages for emotional distress to employee mother after work-related miscarriage]; *Dillon* v. *S.S. Kresge Company* (1971) 35 Mich.App. 603 [192 N.W.2d 661] [mother contracted rubella at work, resulting in injury to fetus; remanded for trial in light of rule allowing such actions without reference to workers' compensation issues]; cf. *State Indus. Ins. System* v. *Porter* (1987) 103 Nev. 170 [734 P.2d 729] [mother kicked by horse at place of employment; compensation benefits available for short-term neonatal care of child].) None of the cases discuss in detail the conceptual and policy difficulties surrounding workplace fetal injury.

had no cause of action against PG&E." (*Id.*, at p. 192, original italics.) While the logical extension of *Salin* creates difficulty when we consider other hypothetical consequences of an employee injury,[5] it provides a framework for decision in this case.

■ The claims of Bell, Freytes, and Baby Freytes all rest on the consequences of the negligent treatment of Bell by Macy's nurse. As we have previously concluded, any injury to Bell caused by that treatment was within the compensation scheme, as it occurred in the course of her employment, and no exception to coverage exists. Clearly, the injury to Baby Freytes was a collateral consequence of the treatment of Bell. The nurse did not treat Baby Freytes; she treated Bell. Baby Freytes's injury derived from the treatment of Bell in precisely the same manner as the deaths of plaintiff's children in *Salin* derived from his work-related insanity, and as the mental distress of the employee's spouse flowed from the observation of the employee's death in *Williams* v. *Schwartz, supra,* 61 Cal.App.3d 628.[6]

We therefore hold that because the injuries to Baby Freytes were the direct result of Macy's work-related negligence towards Bell, they derived from that treatment and are within the conditions of compensation of the workers' compensation law. By the same token, any mental distress suffered by Bell and Freytes upon discovery of the damage to Baby Freytes derived from the same source. We therefore find that because the claims of Bell and Freytes also derive from the initial work-related treatment of Bell, they too are within the conditions of compensation and are barred by section 3601.

Our conclusion is supported by the purpose of the compensation scheme and the ramifications of a contrary position. ■ Though the "deriva-

---

[5] For example, where injury to an employee is the proximate cause of injury to an unrelated third person, as where the employee, disabled by a job-related condition, causes an automobile accident, the logic of *Salin* would excuse the employer in a situation clearly not contemplated by the workers' compensation scheme. The restriction of the derivative injury rule to the family of the employee has surface appeal, but breaks down when we begin to consider divorce, adoption, and the existence of blood relatives who may not have close relations with the employee, and unrelated persons who do. Such parsing of the world of possible victims into family and nonfamily members would lead us into a thicket of distinctions from which we might never escape with our logical faculties intact. Luckily, we do not have these problems before us, and only note them to emphasize the need for legislation in this area. (See fn. 7, *post.*)

[6] The dissent points out that there may be situations in which fetal injury will occur without injury to the mother. In such situations, the dissent argues, there can be no application of the derivative injury doctrine, because there is no employee injury from which the fetal injury can derive. (See pp. 1456-1457, *post.*) The dissent overlooks the central physical fact that compels application of the doctrine: that the fetus *in utero* is inseparable from its mother. Any injury to it can only occur as the result of some condition affecting its mother. When, as in the case at bench, the condition arises in the course of employment, the derivative injury doctrine would apply.

tive" injury doctrine apparently has its roots in the defunct common law notion that a wife's right to sue for injury to her husband was derivative and collateral to the husband's rights (see *Gillespie* v. *Northridge Hosp. Foundation, supra,* 20 Cal.App.3d at p. 870 [referring to common law derivative rights]; cf. *Follansbee* v. *Benzenberg* (1954) 122 Cal.App.2d 466, 476-477 [265 P.2d 183, 42 A.L.R.2d 832] [rejecting common law rule]), it is more appropriately founded on the perception that the employer, having given up all common law defenses and undertaken a form of strict liability to employees, should not be held liable in tort for certain collateral consequences of a covered injury (*Williams* v. *State Compensation Ins. Fund, supra,* 50 Cal.App.3d at pp. 122-123; § 3600 [limiting the employer's liability to "any person" arising out of workplace injury to employees]). Moreover, were the fetus of a pregnant worker to retain a separate tort cause of action for injury to it, the employer would face a serious risk. If, through the personal or imputed negligence of the employer, the yet-unborn child is injured, it would immediately possess a cause of action in tort against the employer outside the scope of the compensation statutes. The range of common workplace injury that could result in injury or death to a fetus needs little exposition. Trips and falls, car accidents, explosions, fires, and other unfortunate but not unheard-of incidents of employment all may cause serious injury or death to the unborn as well as its parent. Less obvious are cases of subtle poisoning by exposure to toxic substances, genetic damage caused by radiation, and the other numerous and cautionary byproducts of the Industrial Revolution. Moreover, in addition to potential civil liability to the fetus, the employer faces an equal risk should it decide to limit its exposure by restricting women from the workplace. (See Williams, *Firing the Woman to Protect the Fetus: The Reconciliation of Fetal Protection with Employment Opportunity Goals under Title VII* (1981) 69 Geo. L.J. 641, 653-665.) These considerations may also result in adverse consequences to female employees, who could easily find themselves the victims of financially driven gender discrimination by liability-conscious employers.

In light of these consequences, the application of the derivative injury rule is compelled not only by logic, but by the policy underlying the compensation scheme, which "imposes reciprocal concessions upon employer and employee alike, withdrawing from each certain rights and defenses available at common law; the employer assumes liability without fault, receiving relief from some elements of damage available at common law; the employee gains relatively unconditional protection for the impairment of his [or her] earning capacity, surrendering his [or her] common law right to elements of damage unrelated to earning capacity; the work-connected injury engenders a single remedy against the employer, exclusively cognizable by the compensation agency and not divisible into separate elements of damage available from separate tribunals; a failure of the compensation law

to include some element of damage recoverable at common law is a legislative and not a judicial problem. [Citations.]" (*Williams* v. *State Compensation Ins. Fund, supra,* 50 Cal.App.3d at pp. 122-123.)[7] We are faced with a particularly unfortunate result of a workplace injury, but it remains a workplace injury, which should not subject employers to multiple compensation and tort liabilities, and force them to choose between those risks and discrimination against pregnant women.[8]

We conclude that the injuries to Bell, Freytes, and Baby Freytes are all direct or collateral consequences of an injury to Bell, which injury falls within the conditions of compensation defined by the workers' compensation law. We therefore hold that workers' compensation provides the exclusive remedy for all appellants' injuries.

The judgment is affirmed.

Merrill, J., concurred.

**WHITE, P. J.,** Concurring and Dissenting.—I concur in the portion of the majority opinion addressing the "dual capacity doctrine," but dissent from the remainder of the opinion. I would reverse the summary judgment to the extent it bars Baby Freytes's survival action and the action for his wrongful death. In my view, the injury to Baby Freytes was not "derived" from any injury to his mother, and consequently does not fall within the ambit of the workers' compensation remedy.

The majority acknowledges that when a child who visits his parent's workplace is injured by the negligence of the employer, the child may maintain an action in tort unhampered by the restrictions of the workers' compensation law. The majority goes on to acknowledge that at first glance "there should be no logical difference between these cases and those in which the child is injured *in utero.* The fetus remains a separate person who is not an employee, and retains its own right of action." (Maj. opn., *ante,* pp. 1451-1452.) Nevertheless, the majority defies the logic it has instinctive-

---

[7] We take this opportunity to note that while Baby Freytes has undoubtedly suffered considerable medical and other expenses, the compensation remedy will likely provide nothing to indemnify his parents for that loss. The social cost of workplace injury to the unborn should properly be allocated to the compensation system. However, this is a matter for legislation.

[8] The employer's liability may extend beyond injuries to *pregnant* women. (See Williams, *Firing the Woman to Protect the Fetus: The Reconciliation of Fetal Protection with Employment Opportunity Goals under Title VII, supra,* 69 Geo. L.J. at p. 664, fn. 154 [discussing trend to allow recovery for preconception injury].) The potential for genetic damage exists for both women and men. (See Comment, *Monitoring Employees for Genetic Alteration: Is State Regulation Essential?* (1984) 15 Pacific L.J. 349, 363-364.)

ly recognized in order to bring Baby Freytes's injuries within the ambit of the workers' compensation law. I believe the majority's analysis is incorrect in its interpretation of the law and in its application of public policy.

As I understand it, the majority concludes that the workers' compensation law bars any tort action based on the injuries to Baby Freytes because (1) those injuries were "derived" from a compensable injury to the employee mother; (2) this result is consistent with the purpose of the workers' compensation law; and (3) the ramifications of a contrary position would be devastating to employers. (Maj. opn., *ante*, pp. 1453-1455.) In my view, none of these reasons justify the result reached by the majority.

The primary legal foundation supporting the majority position is the derivative injury doctrine articulated in *Salin* v. *Pacific Gas & Electric Co.* (1982) 136 Cal.App.3d 185 [185 Cal.Rptr. 899], *Williams* v. *Schwartz* (1976) 61 Cal.App.3d 628 [131 Cal.Rptr. 200], and other cases. This doctrine holds that a third party tort action is barred by the exclusive remedy provision of the workers' compensation scheme if it is derived from and is dependent on a compensable injury to an employee. (*Salin, supra,* 136 Cal.App.3d at pp. 191-192; see *Williams* v. *Schwartz, supra,* 61 Cal.App.3d at p. 634.) Thus, the doctrine bars an action for loss of consortium based on work-related injuries to an employee spouse (*Williams* v. *State Compensation Ins. Fund* (1975) 50 Cal.App.3d 116, 123 [131 Cal.Rptr. 200]) and likewise bars an action under *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316] when a wife suffers emotional distress after observing her husband's work-related death or injury (*Williams* v. *Schwartz, supra,* 61 Cal.3d at pp. 631-634). As the majority notes, the rule has its "farthest extension" (maj. opn., *ante*, at p. 1452) in *Salin* v. *Pacific Gas & Electric Co.,* where the court applied the doctrine to bar a wrongful death action brought by the legal representative of children killed by their father who had allegedly been driven insane by work-related stress. (136 Cal.App.3d at pp. 191-193.)

What is important to note about all of the cases which have applied this doctrine is that the injury to the third party would not—and could not—have existed *but for* the injury to the employee. Thus, in the cited cases the third party cause of action was derivative of the employee injury in the purest sense: It simply would not have existed in the absence of injury to the employee.

In the present case, the facts do not fit this pattern. Here, the nurse's negligence caused an injury to Baby Freytes which was not dependent on or derived from any injury to the mother. In fact, there is evidence that any injury to Baby Freytes resulting from the nurse's negligence *preceded* the

negligently caused injury to the mother.[1] Consequently, since we must view the evidence in the light most favorable to appellants, I believe the derivative injury doctrine simply has no application here. In my view, there is no difference between this case and the hypothetical situation where a mother and child both simultaneously receive negligent treatment from a company nurse; although the employee mother would be limited to workers' compensation remedies, the nonemployee child would not be so limited. I believe the same result is proper in this case.

The majority also claims that the purpose of the workers' compensation scheme supports its decision. Again, I disagree. The majority suggests that the employer "having given up all common law defenses and undertaken a form of strict liability to employees, should not be held liable in tort for certain collateral consequences of a covered injury." (Maj. opn., *ante*, p. 1454.) However, the very case the majority relies on for this proposition—*Williams* v. *State Compensation Ins. Fund, supra,* 50 Cal.App.3d 116—makes it clear that it is *employees* (not third party tort victims) who must give up certain rights in exchange for the employer shouldering the burden of strict liability.[2] There is no reason in law or policy why nonemployee third parties—who derive no benefits from the workers' compensation scheme—should be deprived of their right to sue the employer for all damages resulting from negligently caused injuries.

Finally, the majority argues that its decision is supported by "the ramifications of a contrary position." (Maj. opn., *ante*, at p. 1453.) According to the majority, if the unborn child of a pregnant worker were to retain a separate tort cause of action, the employer would face increased potential liability. (Maj. opn., *ante*, at p. 1454.) I do not doubt this is true. Nevertheless, it is not a sufficient reason to deprive the child of his cause of action against the negligent employer.

---

[1] Appellants' medical expert stated that as a result of the nurse's delay the mother's blood supply and blood pressure were reduced to the point where she suffered "hypotension and near shock." The expert did not identify any other injury to the mother which could be attributed to the nurse's negligence. The expert also stated that the delay acted more quickly to injure Baby Freytes and "it is medically probable that BABY FREITAS [*sic*] was injured before there was any significant lowering of the mother's blood pressure."

[2] The *Williams* decision states in pertinent part: "The theory underlying the out-of-state decisions [holding that workers' compensation provides the exclusive remedy even though the resulting disability is noncompensable] is that the workers' compensation plan imposes reciprocal concessions upon *employer* and *employee* alike, withdrawing from each certain rights and defenses available at common law; the employer assumes liability without fault, receiving relief from some elements of damage available at common law; the *employee* gains relatively unconditional protection for impairment of his earning capacity, surrendering *his* common law right to elements of damage unrelated to earning capacity . . . ." (50 Cal.App.3d at p. 122, italics added.)

Although an employer will face potential liability for injuries caused to the unborn children of its employees, in most instances the employers' third party liability insurance will provide coverage. Here, for instance, it is likely that the injury to the unborn child would have been covered by Macy's liability policy. The majority seems to worry that a decision imposing ordinary tort liability will inflate insurance premiums and provide an incentive to employers to discriminate against pregnant woman workers. Although these are regrettable consequences of a decision imposing liability, in my view they do not justify a contrary decision which—as the majority acknowledges—will deprive the injured child and his parents of any compensation for injuries suffered by the child at the hands of the negligent employer.[3] (Maj opn., *ante*, at p. 1455, fn. 7.)

Finally, I do agree with the majority that the problems posed by this case call for a legislative response. (Maj. opn., *ante*, at p. 1453, fn. 5, & p. 1455, fn. 7.) The regrettable result the majority reaches leaves the parents in this case completely at sea. Neither the employer, the workers' compensation system, nor the employer's liability insurer now have an obligation to provide compensation for the injuries suffered by Baby Freytes. Although this may be the best of all possible worlds from the employer's perspective, it is the worst of all possible worlds for the parents who—caught in the gap between ordinary tort liability and the workers' compensation remedy—are left to fend for themselves. Consequently, I join with my colleagues and call on the Legislature to fill the gap left by the majority's decision.

Appellants' petition for review by the Supreme Court was denied November 16, 1989.

---

[3] It bears noting that at least one state—Louisiana—holds that an employer is liable in tort for injuries caused to the unborn children of its employees. In *Adams* v. *Denny's Inc.* (La.App. 1985) 464 So.2d 876 [55 A.L.R.4th 787], a pregnant Denny's waitress slipped and fell due to the negligence of the restaurant. The fall resulted in the loss of the baby and the parents sued Denny's for the wrongful death of the unborn child. The Louisiana court held that the action was not barred by the exclusivity section of the state workers' compensation law. To my knowledge, employers have not fled Louisiana *en masse* as a result of this decision.