[L.A. No. 31226. July 10, 1980.]

LINDA D'ANGONA, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES, Defendant and Respondent.

**Counsel**

Samuel Shore, William B. Anderson and Joanne P. Leggio for Plaintiff and Appellant.

Home & Clifford, Randall L. Shelley and Arthur E. Schwimmer for Defendant and Respondent.

OPINION

MOSK, J.—Plaintiff Linda D'Angona contracted a disease in the course of her employment with Los Angeles County-University of Southern California Medical Center, a county hospital, and was treated at the hospital by doctors in the hospital's employ. She asserts that the doctors who treated her were negligent, and that she suffered additional injuries as a result of their negligence. Ultimately, she received a workers' compensation award which included compensation for the disability resulting from the aggravation of the disease by the assertedly negligent treatment. Thereafter, plaintiff filed the present action against Los Angeles County, seeking damages for the aggravation of her disease.

The sole issue on this appeal from the dismissal of her action is whether it is barred by statutes which provide that workers' compensation is the exclusive remedy against an employer where the conditions of compensation exist (Lab. Code, §§ 3600, 3601, 3603),[1] or whether the hospital may be held liable in an action at law under the dual capacity doctrine enunciated in *Duprey v. Shane* (1952) 39 Cal.2d 781 [249 P.2d 8].

---

[1]Unless otherwise stated, all references in this opinion are to the Labor Code. Section 3600 provides in part, "Liability for the compensation provided by this division [division 4, Workers' Compensation and Insurance], in lieu of any other liability whatsoever...shall, without regard to negligence, exist against an employer for any injury sustained by his employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur:

"(a) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division.

"(b) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment.

"(c) Where the injury is proximately caused by the employment, either with or without negligence."

Section 3601 provides in part: "(a) Where the conditions of compensation exist, the right to recover such compensation pursuant to the provisions of this division is...the exclusive remedy for injury or death of an employee against the employer or against any other employee of the employer acting within the scope of his employment...."

Section 3603 states: "Payment of compensation in accordance with the order and direction of the appeals board shall discharge the employer from all claims therefor."

Plaintiff was a physical therapist employed by the hospital at the time she became ill in February 1971. She was admitted to the hospital on February 19, and while a patient there developed a high fever and other symptoms. It was discovered that she had contracted an infection called meningococcemia. She developed gangrene in the extremities, resulting in the amputation of all her toes and all fingers except one. In 1974, she filed two applications for workers' compensation benefits, alleging that she had suffered internal injuries by virtue of "exposure" in her work, resulting in amputation of her fingers and toes. After an award of benefits was made in her favor for disability arising from these injuries, she filed the present action in the superior court for damages against the county,[2] alleging that the doctors employed by the hospital had negligently diagnosed and treated her, that she did not make an informed consent to the treatment administered by them, and that as a result of their conduct she suffered not only the amputations described above, but severe central nervous system damage as well.[3]

The trial court dismissed the action on the ground that the court lacked jurisdiction of the action because of the provisions of sections 3601 and 3603.

The general principles governing the scope of liability of an employer to an employee who suffers an industrial injury are so well settled that they do not require extensive discussion. ■ An employee whose disability arises from injury or disease incurred in the employment is confined to workers' compensation benefits against the employer or its insurance carrier not only for the original injury, but also for aggravation by negligent medical treatment. But section 3852 provides that the employee is not precluded from seeking damages against a "person other than the employer," and under this provision he may sue a doctor or hospital at law for damages which arise from aggravation of an industrial injury by negligent medical treatment. (*Duprey* at pp. 790-791; *Heaton* v. *Kerlan* (1946) 27 Cal.2d 716, 721 [166 P.2d 857]; *Fitzpatrick* v. *Fidelity & Casualty Co.* (1936) 7 Cal.2d 230, 233-234 [60 P.2d 276].)

---

[2]Plaintiff also named as defendants the hospital and various doctors and hospital attendants sued as fictitious parties. However, she served the complaint only upon the county, which is the sole respondent on this appeal. The county in its answer admitted it is engaged in operating the Los Angeles County-University of Southern California Medical Center.

[3]Some of the facts recited above are derived not from the complaint but from interrogatories and from documents of which the trial court apparently took judicial notice pursuant to the request of the county.

In some cases, the employer has been held to occupy a dual capacity, subjecting him to liability for workers' compensation benefits for the initial industrial injury (in his role as employer) as well as for damages in an action at law for aggravation of that injury by negligent medical treatment (in his capacity as a "person other than the employer").

Foremost among these cases is *Duprey*. There, a nurse employed by a medical partnership which practiced chiropractic medicine was injured in the course of her employment. She was treated by two doctors; one a partner (Dr. Shane), and the other an employee of the partnership (Dr. Harrison). It was held that, although she had recovered workers' compensation benefits, she could nevertheless maintain an action at law for damages against the partnership, the partners, and both doctors who had treated her, for aggravation of her injuries by negligent medical treatment.

This court reasoned that Dr. Shane bore two relationships toward the plaintiff—one as employer and the other as her doctor; that as an employer he was under a duty to provide compensation for her injuries but was not under an obligation to treat her personally; and that if he had sent the plaintiff to a doctor retained by the workers' compensation insurer, that doctor would have been liable for malpractice. We stated, "There seems to be no logical reason why the employer-doctor, when he undertakes to treat the industrial injury, should not be responsible in a civil action for his negligent acts in treating that injury. Once it is established that an action before the commission for the industrial injury is no bar to an action against the insurance doctor for malpractice, it would seem to follow that the employee does not lose his right to such an action simply because the employer who happens to be a doctor treats the injury. In such event, the employer-doctor is a 'person other than the employer' within the meaning of section 3852 of the Labor Code .... In treating the injury Dr. Shane did not do so because of the employer-employee relationship, but...as an attending doctor, and his relationship to...plaintiff...was that of doctor and patient.'" (39 Cal.2d at p. 793.) Dr. Harrison was held to be liable because he occupied the same position as a physician retained by the insurer to treat the injury.

The dual capacity doctrine has been applied in a number of different contexts. A defendant was held to occupy the positions of both an employer and a manufacturer of scaffolds sold to the general public and to be liable at law for damages in the latter role to an employee injured

while using one of the scaffolds. (*Douglas* v. *E. & J. Gallo Winery* (1977) 69 Cal.App.3d 103, 107 [137 Cal.Rptr. 797]; cf. *Shook* v. *Jacuzzi* (1976) 59 Cal.App.3d 978, 981 [129 Cal.Rptr. 496]; *Williams* v. *State Compensation Ins. Fund* (1975) 50 Cal.App.3d 116, 120 [123 Cal.Rptr. 812].) And in another case a defendant who was both a bareboat charterer and the employer of a longshoreman was held to be liable for damages at law for injuries suffered by the longshoreman while loading the vessel not as an employer but as the charterer who had a duty to assure that the vessel was seaworthy. (*Reed* v. *The Yaka* (1963) 373 U.S. 410, 415 [10 L.Ed.2d 448, 452, 83 S.Ct. 1349]; and see cases collected in 2A Larson, Workmen's Compensation Law (1976) § 72.80.)[4]

■ The county asserts, however, that the doctrine enunciated in *Duprey* is not applicable in the present case because here, unlike the situation in *Duprey*, the county-employer did not personally treat plaintiff; rather, she is attempting to hold the county liable under the principles of respondeat superior for negligence of the doctors employed by the hospital. In this connection, the county relies upon a statement in *Duprey* that respondeat superior was not there involved because both doctors held subject to civil liability had personally treated the plaintiff. (39 Cal.2d at p. 795.)

The issue, then, is whether the fact that plaintiff is seeking to hold liable the county which employed the allegedly negligent doctors rather than the negligent physician-employer himself is determinative. We think not.[5] Underlying *Duprey* is the rationale that if any injury arises from a relationship which is distinct from that of employer and employee and invokes a different set of obligations than the employer's duties to its employee, there is no justification for shielding the employer from liability at common law.

---

[4]*Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 636 [102 Cal.Rptr. 815, 498 P.2d 1063], applied the dual capacity doctrine in a somewhat different context. There, although we recognized that an insurer ordinarily stands in the shoes of the employer in investigating a claim for workers' compensation and is thus immune from liability at law for a negligent investigation, it became a "person other than the employer" when it "stepped out of its proper role" by committing an intentional tort against the employee in the course of its investigation. (See also *Dorado* v. *Knudsen Corp.* (1980) 103 Cal.App.3d 605, 611-614 [163 Cal.Rptr. 477].)

[5]It should be noted that in *Duprey* the partnership (of which Dr. Shane was a partner and Dr. Harrison an employee) was itself held to be liable to the plaintiff.

Larson declares that the decisive test of dual capacity is whether the nonemployer aspect of the employer's activity generates a different set of obligations by the employer toward the employee. Thus, since a doctor's obligation toward his patient arises because he undertakes to render medical treatment, if he treats an employee rather than paying another for treatment he should be liable as a doctor rather than as an employer. (2A Larson, Workmen's Compensation Law (1976) *supra*, § 72.80, pp. 14-117, 14-118.) The same rule should apply, according to Larson, to a carrier which, instead of paying for medical treatment, directly performs such services. (Larson, *Workmen's Compensation Insurer as Suable Third Party* (1969) Duke L.J. 1117, 1136.)

The relationship between a county which operates a public hospital and its patients clearly involves a different set of obligations from the hospital's obligations toward its employees. Paraphrasing *Duprey*, it may be said that in treating plaintiff's injuries the hospital did not act in its capacity as employer but as a hospital, and since it assumed the obligations of a hospital to a patient it should be liable in that capacity rather than as an employer for the aggravation of plaintiff's injury.

This rationale has been followed in a number of cases involving hospital employees. In *Guy* v. *Arthur H. Thomas Co.* (1978) 55 Ohio St.2d 183 [9 Ohio Ops.3d 138, 378 N.E.2d 488, 492], the plaintiff, an employee of a hospital, contracted mercury poisoning in the course of her employment. She alleged that the hospital negligently failed to diagnose her condition correctly, resulting in aggravation of the disease. The Ohio Supreme Court, relying upon *Duprey* and *Reed*, held that the hospital could be held liable for malpractice. The court opined that the hospital occupied the dual capacity of employer and treating hospital toward the plaintiff, and that it functioned in the latter capacity in treating her and had therefore assumed the obligations of the patient-hospital relationship. It declared that if the plaintiff had been negligently treated at a hospital other than the one operated by her employer she would have had the right to bring a malpractice action, and her need for protection against malpractice was as great as that of any other patient.

Other cases, which were decided before the dual capacity doctrine was enunciated in *Duprey*, have held that the workers' compensation law does not bar an employee of a hospital open to the public from recovering damages at law against the public entity which operated the

hospital, for injuries sustained as the result of negligent treatment, resulting in the aggravation of an industrial injury. (*Stevens* v. *County of Nassau* (1977) 56 App.Div.2d 866 [392 N.Y.S.2d 332, 333]; *Volk* v. *City of New York* (1940) 284 N.Y. 279 [30 N.E.2d 596, 597].)[6]

We do not find compelling the cases, relied upon by the county, which hold that neither the employer nor its insurer may be held liable in an action at law for the negligence of a doctor who treats an industrial injury. (*Deauville* v. *Hall* (1961) 188 Cal.App.2d 535, 543-544 [10 Cal.Rptr. 511]; *Hazelwerdt* v. *Industrial Indem. Exchange* (1958) 157 Cal.App.2d 759, 764-765 [321 P.2d 831].) These cases involve a fundamentally distinguishable situation: the employee attempted to hold the employer or its insurer liable in a civil action for the aggravation of an industrial injury resulting from negligent treatment by a doctor to whom the employee was referred for treatment. Here, by contrast, the hospital-employer undertook to provide that care itself. Larson recognizes the difference between the two situations, stating that there is a "crucial difference" between "Paying for services and physically performing them" because it is "virtually impossible to cause physical injury by writing a check" but "very possible" to do so by "administering medical treatment. . . ." (Larson, *Workmen's Compensation Insurer as Suable Third Party* (1969) *supra*, Duke L.J. 1117, 1137.)

■ The county implies that if plaintiff prevails in the present action she will receive double recovery for her injuries because she has already been compensated in the workers' compensation proceeding for the amputation of her fingers and toes. We agree that plaintiff is not entitled to double recovery for the same injury. Therefore, to the extent that the award made in her favor by the Workers' Compensation Appeals Board

---

[6]*Volk* stated, "The risk of the injury which plaintiff suffered was not incidental to her employment. It was a risk to which any one receiving like treatment at the hospital would have been subjected. The occurrence of the injury was not made more likely by the fact of her employment. Consequently, the injury did not arise out of and in the course thereof." (30 N.E.2d at p. 597.) The case was later overruled on its facts rather than because of its reasoning. *Garcia* v. *Iserson* (1974) 33 N.Y.2d 421 [353 N.Y.S.2d 955, 309 N.E.2d 420, 422], held that *Volk* was based upon the assumption that the hospital facilities utilized by the plaintiff were also available to the general public, whereas in fact the plaintiff in *Volk* was treated in the nurse's infirmary, which was not open to the public. *Garcia* held that an employee could not sue for damages at law for aggravation of an industrial injury by negligent treatment in the employer's infirmary if the services of the infirmary were available only to employees and not to the public. In the present case, plaintiff was treated at a public hospital rather than a private infirmary conducted for the sole benefit of employees. (Cf. *Dixon* v. *Ford Motor Co.* (1975) 53 Cal.App.3d 499, 505 [125 Cal.Rptr. 872].)

reflects benefits afforded for the aggravation of her injuries by the assertedly negligent conduct of the county's hospital, the county is entitled to a set-off of payments made pursuant to the award against any recovery plaintiff obtains in the present action. (Cf. *Unruh* v. *Truck Insurance Exchange* (1972) *supra*, 7 Cal.3d 616, 636.)

In treating plaintiff's disease the county owed her a duty separate and distinct from its duty as her employer, and this was the duty to provide medical care free of negligence—the same duty that it owes to any member of the public who becomes a patient at its hospital. The fact that the county allegedly breached this obligation by employing negligent doctors rather than by some other purportedly negligent act did not absolve it of its responsibility to assure that the medical care which it directly undertook to provide was performed without negligence.

The judgment is reversed.

Bird, C. J., Tobriner, J., Clark, J., Richardson, J., and Newman, J., concurred.

MANUEL, J.—I concur in the judgment under compulsion of *Duprey* v. *Shane* (1952) 39 Cal.2d 781 [249 P.2d 8] which decision, in my opinion, should be reexamined.