[No. A070687. First Dist., Div. Two. Sept. 5, 1996.]

ELEANOR ALANDER, Plaintiff and Appellant, v.
VACAVALLEY HOSPITAL et al., Defendants and Respondents.

1300

COUNSEL

Kenneth C. Johnson for Plaintiff and Appellant.

Lanius & Taylor and Robert F. Tyler for Defendants and Respondents.

OPINION

KLINE, P. J.—

## I.  *Introduction*

Eleanor Alander appeals from the trial court's judgment following its order granting summary judgment in favor of respondent Northbay Healthcare Corporation doing business as Northbay Healthcare Foundation and

VacaValley Hospital (hereinafter VacaValley). She also appeals the court's order denying her motion for reconsideration, and its order modifying the earlier summary judgment order and denying her motion for new trial. Appellant contends that the Workers' Compensation Act is not her exclusive remedy because the dual capacity exception allows her to bring a tort action against VacaValley, her employer, for negligent medical treatment where the doctor-patient relationship between them arose after her initial industrial injury. She further contends that her workers' compensation benefits award received on July 7, 1992, is not res judicata as to her current medical malpractice suit.

Because we conclude that the dual capacity doctrine is not applicable and appellant's exclusive remedy lies within the workers' compensation scheme, we shall affirm the judgment.

## II.  *Statement of Facts*

In March of 1992, appellant became a volunteer at VacaValley. On May 7, 1992, while working at the hospital, appellant's hand was punctured with possibly contaminated scissors. This type of injury is commonly referred to as a "needle stick."

At the time of appellant's injury, VacaValley had in place a protocol for "Significant Employee Exposure to Blood or Bodily Fluids." The protocol, which is one of the terms and conditions of all hospital employees' (and volunteers') employment, requires that an employee who suffers potential exposure to blood or body fluids be vaccinated for hepatitis B if deemed necessary, unless the employee declines vaccination by written statement. The protocol also states that HIV antibody testing will be recommended and that "[t]esting is voluntary, free and confidential, and may be done in house or at another lab." HIV testing, if elected, is to be done within one week of the exposure and then at three and six months. All expenses are borne by VacaValley under its employee health program.

Pursuant to this protocol, on May 7, 1992, following the needle stick, appellant elected to receive treatment at VacaValley. She was given gamma globulin shots to prevent hepatitis and had blood drawn for HIV testing. On June 16, 1992, appellant received a second hepatitis shot and had more blood drawn for HIV testing at VacaValley. During this second blood draw, appellant sustained nerve damage to her right arm, resulting in an 11 percent permanent disability.

## III.  *Statement of the Case*

On June 23, 1992, appellant filed a claim for workers' compensation benefits, which described her injury as the May 7, 1992, needle stick and the

June 16, 1992, nerve damage. On or about July 7, 1994, appellant received a $2,397.50 award for injury to her left hand (the needle stick) and to her right arm (the nerve damage).

On September 3, 1993, appellant filed a lawsuit against VacaValley, alleging medical malpractice with regard to the nerve injury of June 16, 1992. On February 10, 1994, VacaValley moved for summary judgment, contending that appellant was barred from seeking damages at law by the exclusive remedy provision of workers' compensation set forth in Labor Code section 3602. The trial court granted VacaValley's summary judgment motion on March 16, 1995, stating in a written order, "Defendant's Motion for Summary Judgment is granted, as plaintiff is precluded from suing defendants by availing herself of the workers' compensation remedy." At the hearing on the summary judgment motion, the court made it clear that it considered the workers' compensation award of July 7, 1994, which included an award for the June 16, 1992, nerve damage, to be res judicata on the issue, citing *Lake* v. *Lakewood Chiropractic Center* (1993) 20 Cal.App.4th 47 [24 Cal.Rptr.2d 358].

Before the court entered judgment on its March 16, 1995, order, appellant filed a motion for reconsideration, pursuant to Code of Civil Procedure section 1008. Appellant based this motion on "newly discovered evidence," consisting of an affidavit from her counsel stating that the reference to the June 16, 1992, nerve damage injury had been included in the June 23, 1992, workers' compensation claim as a "customary housekeeping procedure" and that the claim did not allege two separate industrial injuries. On May 18, 1995, appellant filed a motion for new trial, pursuant to Code of Civil Procedure section 655 et seq., on the same basis as her motion for reconsideration.

On April 27, 1995, the court denied appellant's motion for reconsideration of the order granting summary judgment, stating that the facts presented were not new, as required under Code of Civil Procedure section 1008. On June 8, 1995, after consideration of appellant's motion for a new trial, the trial court modified its March 16, 1992, order granting summary judgment to read: "The Motion for Summary Judgment by defendants . . . is granted as plaintiff's exclusive remedy is pursuant to the Workers' Compensation Laws." The trial court denied appellant's motion for a new trial.

On July 7, 1995, appellant filed a timely notice of appeal from the court's summary judgment and related orders.

## IV. *Standard of Review*

The trial court may grant a motion for summary judgment only if there are no triable issues of fact and the moving party is entitled to

judgment as a matter of law. (*Villa v. McFerren* (1995) 35 Cal.App.4th 733, 741 [41 Cal.Rptr.2d 719]; *Sturtevant v. County of Monterey* (1991) 228 Cal.App.3d 758, 761 [279 Cal.Rptr. 161].) On review, we consider the parties' arguments and evidence de novo. (*Villa v. McFerren, supra,* 35 Cal.App.4th at p. 741; *Saldana v. Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1511-1513 [285 Cal.Rptr. 385].)

## V. *Discussion*

The issue presented by this case is whether workers' compensation is the sole remedy available to a hospital employee who is negligently injured by her hospital-employer while voluntarily undergoing medical treatment for a prior industrial injury pursuant to a protocol put in place by the hospital for treating employee exposure to blood or bodily fluids.[1]

### A. *The June 16, 1992, nerve damage is an injury compensable under workers' compensation.*

■ The workers' compensation scheme is to be liberally construed in favor of awarding benefits to the employee. (*Maher v. Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 729, 733 [190 Cal.Rptr. 904, 661 P.2d 1058]; *Bell v. Macy's California* (1989) 212 Cal.App.3d 1442, 1449 [261 Cal.Rptr. 447]; *Wickham v. North American Rockwell Corp.* (1970) 8 Cal.App.3d 467, 472 [87 Cal.Rptr. 563].) Section 3600, subdivision (a) of the Labor Code[2] provides the conditions under which an injured employee may avail herself of the workers' compensation remedy. These conditions of compensation normally are met if the employee's injury "aris[es] out of and in the course of the employment" and "is proximately caused by the employment . . . ." An injury arises out of employment if the employment and the injury are linked in some causal fashion. (*Maher v. Workers' Comp. Appeals Bd., supra,* 33 Cal.3d at p. 734.) An employee acts in the course of employment when he " ' "does those reasonable things which his contract with his employment expressly or impliedly permits him to do." ' " (*Id.* at p. 733, quoting *State Comp. Ins. Fund v. Indus. Acc. Com.* (1924) 194 Cal. 28, 33 [227 P. 168].) The injury need not occur while the employee is rendering services to the employer but may be sustained while the employee is enjoying a benefit of her employment. (*Wickham v. North American Rockwell Corp., supra,* 8 Cal.App.3d at p. 472.) For an injury to be proximately caused by employment, it only must be such that without the employment, it would not have occurred. (*Ibid.*)

---

[1]Although appellant was a hospital volunteer, it is not contested that for the purposes of workers' compensation she had the status of an employee. Indeed, on July 7, 1994, appellant received a workers' compensation benefits award for her injury.

[2]Unless otherwise stated, all statutory references are to the Labor Code.

■ Appellant argues that the June 16, 1992, nerve damage sustained as a result of a hospital employee's alleged negligence in drawing blood from her right arm did not arise out of or in the course of employment, but during treatment for a prior industrial injury. Although the injury did arise during treatment for appellant's May 7, 1992, needle stick, we agree with respondent that the treatment arose out of and in the course of her employment.

When an employee is injured during conduct incidental to employment and provided for her benefit, the injury falls within the workers' compensation scheme. (*Bell* v. *Macy's California*, *supra*, 212 Cal.App.3d at p. 1449; *Wickham* v. *North American Rockwell Corp.*, *supra*, 8 Cal.App.3d at p. 472.) For example, annual medical examinations provided to employees by an employer in an effort to address health hazards inherent in the workplace satisfy section 3600 because they are "impliedly contemplated by the work, and [are] for the mutual benefit and convenience of both employer and employee." (*Wickham* v. *North American Rockwell Corp.*, *supra*, 8 Cal.App.3d at p. 473.) Similarly, injury sustained by an employee while visiting her workplace's on-site clinic during working hours falls within workers' compensation because her visit to the employer-maintained clinic arose out of and in the course of her employment. (*Bell* v. *Macy's California*, *supra*, 212 Cal.App.3d at p. 1449.)

Here, appellant sustained the nerve damage injury while undergoing treatment provided to her as an employee under a protocol that obligated her employer to provide certain benefits to her in the event of a needle stick. The treatment was provided free of charge and, at appellant's election, by the hospital itself. The record reveals that the treatment was provided as an employee health benefit. Based on these facts, we find that appellant's June 16, 1992, nerve injury, sustained while undergoing treatment pursuant to VacaValley's protocol for employee exposure to blood or bodily fluids, arose out of and in the course of employment. Moreover, the injury was proximately caused by the employment because, but for the employment, appellant would not have sustained the needle stick and then sought treatment at VacaValley. Thus, we find the June 16, 1992, injury compensable under section 3600, subdivision (a).

B.   *The dual capacity exception does not apply.*

■ Appellant argues that even if the June 16, 1992, injury is compensable, the dual capacity exception permits her to sue VacaValley in tort for medical malpractice. Relying on *Duprey* v. *Shane* (1952) 39 Cal.2d 781 [249 P.2d 8], and its progeny, appellant claims that in treating her for possible exposure to tainted blood, VacaValley stepped out of its role as employer

and into that of medical care provider. Thus, under the dual capacity exception to the exclusive remedy provision of workers' compensation (§ 3602), appellant argues that she may maintain a civil action against VacaValley as a medical care provider for the alleged malpractice that resulted in an 11 percent disability to her right arm.

Section 3602, subdivision (a), provides that when the conditions of compensation under section 3600 are met, such compensation is, except as specifically provided in sections 3602, subdivision (b), 3706 and 4558 (which are not applicable here), "the sole and exclusive remedy of the employee . . . against the employer . . . ." Under section 3852, however, an employee is permitted to seek damages that arise from the aggravation of an industrial injury against persons other than the employer. The dual capacity exception to the exclusive remedy provision set forth in section 3602 allows employees to recover in tort for negligent aggravation of an initial industrial injury against an employer who assumes the capacity of medical care provider by undertaking to treat the employee's injury itself. (*Duprey* v. *Shane, supra,* 39 Cal.2d at p. 793.)

The essence of this doctrine is that the employer as medical care provider engages in a relationship with the employee as patient that is separate and distinct from the employer-employee relationship. Because this doctor-patient relationship imposes different obligations on the employer, the employer as medical care provider becomes liable under section 3852 to the employee as patient separately and distinctly with respect to any injury resulting from the medical treatment itself. (See *Duprey* v. *Shane, supra,* 39 Cal.2d at p. 793; see also *D'Angona* v. *County of Los Angeles* (1980) 27 Cal.3d 661, 664-665 [166 Cal.Rptr. 177, 613 P.2d 238]; *Sturtevant* v. *County of Monterey, supra,* 228 Cal.App.3d at p. 762.) Section 3602, subdivision (a), as amended in 1982, prohibits the dual capacity exception when "either the employee or the employer also occupied another or dual capacity prior to, or at the time of, the employee's industrial injury . . . ."[3]

In the seminal case of *Duprey,* a nurse employed by a chiropractic partnership was injured in the course of employment. Two of the partnership's doctors undertook to treat her and, through their own negligence,

---

[3]While there is some uncertainty among the courts over the extent to which the 1982 amendments affect the application of the dual capacity doctrine, it appears that dual capacity still applies where a medical care provider-employer undertakes to treat its employee personally for an industrial injury and negligently aggravates that injury when the doctor-patient relationship arises *after* the initial industrial injury occurs. (*Sturtevant* v. *County of Monterey, supra,* 228 Cal.App.3d at pp. 766-767; see also *Hendy* v. *Losse* (1991) 54 Cal.3d 723, 736, fn. 10 [1 Cal.Rptr.2d 543, 819 P.2d 1] [acknowledging the holding in *Sturtevant*]; but see 2A Larson, Workmen's Compensation (1996) § 72.81(c), pp. 14-290.101 to 14-290.111.) However, because we find that dual capacity does not apply here, we need not address this issue.

further aggravated her initial industrial injury. (*Duprey* v. *Shane, supra*, 39 Cal.2d at pp. 781-789.) The California Supreme Court explained that although the partnership had an obligation as the nurse's employer to secure compensation for her industrial injury, it was under no obligation to treat her personally. Thus, the court held that the employee could sue the doctor for the aggravation of her injury resulting from negligent medical treatment, regardless of the fact that the doctor was also her employer. (*Id.* at p. 793.)

Similarly, in *D'Angona* v. *County of Los Angeles*, which follows *Duprey* and on which appellant relies, an employee who sustained an industrial injury at the hospital where she worked was admitted to that hospital and her injury was subsequently aggravated by negligent medical treatment. The California Supreme Court found that in personally treating its employee for an industrial injury the hospital-employer stepped out of its role as employer and into that of medical care provider. Because as medical care provider the employer owed the employee the same duty as it owed any member of the public, separate and distinct from its obligation to her as employer, the employee was entitled to bring a civil action for medical malpractice against the employer, the exclusive remedy provision of workers' compensation notwithstanding. (*D'Angona* v. *County of Los Angeles, supra*, 27 Cal.3d at pp. 667, 669; see also *Sturtevant* v. *County of Monterey, supra*, 228 Cal.App.3d at p. 765 [facts and result similar to those in *D'Angona*].)

However, in *Bell* v. *Macy's California, supra,*, 212 Cal.App.3d 1442, the Court of Appeal refused to extend the dual capacity exception. In that case, a pregnant employee became ill at work and sought treatment at the in-house clinic provided by her employer. Because of the attending nurse's negligence, the employee's then unborn baby eventually died. The *Bell* court found that in providing a medical clinic for its employees, Macy's never stepped out of its role as employer and into that of medical care provider. (*Bell* v. *Macy's California, supra*, at pp. 1450-1451.) The court also found that the employee attended the clinic as an employee, not a member of the public, and therefore held that the dual capacity exception did not apply. (*Ibid.*)

In the case before us, VacaValley imposed upon itself, under its protocol, an obligation to personally provide treatment to an employee suffering a possible exposure to tainted blood or bodily fluids, if the employee so chose. In contrast, the employers in *Duprey*, *D'Angona* and *Sturtevant* accepted no obligation to personally treat their employees, but rather treated them as they would any member of the public. (*Duprey* v. *Shane, supra*, 39 Cal.2d at p. 793; *D'Angona* v. *County of Los Angeles, supra*, 27 Cal.3d at pp. 663-664; *Sturtevant* v. *County of Monterey, supra*, 228 Cal.App.3d at p. 761.) In

personally treating appellant, VacaValley was fulfilling its obligation under the protocol as her employer, not as her medical care provider. And in electing to receive treatment at VacaValley, appellant was asserting her right as an employee under that same protocol.

Appellant points out that had she elected to receive treatment elsewhere at VacaValley's expense, which was her right under the protocol, she would have a tort remedy against the negligent medical care provider for the nerve damage injury. However, that scenario is not before us. Instead, appellant chose to undergo treatment at VacaValley and thus appeared at the hospital on June 16, 1992, as an employee exercising a right given to her as a benefit of her employment. "Where an employee is injured in the course of employment, it is irrelevant to the application of the conditions of compensation that the same injury might have occurred outside the course of that employment." (*Bell* v. *Macy's California, supra*, 212 Cal.App.3d at p. 1451.) Because we find no indication that VacaValley or appellant stepped out of their respective roles of employer and employee, we decline to apply the dual capacity exception and hold that workers' compensation is appellant's exclusive remedy. (See *ibid.*)[4]

## VI. *Conclusion*

Because workers' compensation is appellant's exclusive remedy for the June 16, 1992, nerve damage injury, the trial court properly granted summary judgment for VacaValley and properly denied the related motions in the action brought against it by appellant for medical malpractice.[5]

The judgment is affirmed. Costs on appeal to respondent VacaValley.

Lambden, J., and Hitchens, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied November 26, 1996. Mosk, J., and Werdegar, J., were of the opinion that the petition should be granted.

---

[4]Because we find the dual capacity doctrine wholly inapplicable to the present situation, we need not address whether dual capacity existed prior to or at the time of the June 16, 1992, nerve damage injury. (See § 3602, subd. (a); *Lake* v. *Lakewood Chiropractic Center, supra*, 20 Cal.App.4th at pp. 51-54.)

[5]Because workers' compensation is appellant's exclusive remedy, we need not address the res judicata issue.

*Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.