[No. A075722. First Dist., Div. Three. Oct. 30, 1997.]

BETH WEINSTEIN, Plaintiff and Appellant, v.
ST. MARY'S MEDICAL CENTER, Defendant and Respondent.

COUNSEL

Milton S. Weiss and B. E. Bergesen III for Plaintiff and Appellant.

Bjork, Lawrence, Poeschl & Kohn, Robert K. Lawrence, Elizabeth K. Ryan and Mark P. Epstein for Defendant and Respondent.

OPINION

WALKER, J.—This case presents the issue whether an employee's action against her employer for injuries sustained as the result of a "slip and fall" while on the employer's premises in the course of treatment for a prior work-related injury is barred by the provisions of the Labor Code establishing workers' compensation as the exclusive remedy for her recovery (Lab. Code, §§ 3600-3603);[1] or whether the employer may be held liable based upon the common law duty of a landowner to an invitee to exercise reasonable care in maintaining premises to avoid exposing persons to an unreasonable risk of harm. The trial court granted summary judgment to respondent St. Mary's Medical Center (the Hospital), holding that it had established a complete defense to the action on the grounds appellant Beth Weinstein's exclusive remedy was under the workers' compensation law and her complaint for damages was statutorily barred by sections 3600 and 3602.

---

[1] Unless otherwise indicated, all further statutory references are to the Labor Code.

To answer the question posed, we focus upon the nature of the duties owed by an employer to its employee, and their origin at the time of the injury at issue. We conclude the Hospital failed to establish that the "conditions of compensation" existed at the time of the injury, as required by section 3600. It therefore failed to meet its burden, as moving party on motion for summary judgment, of establishing a complete defense to the action based upon the exclusivity of the statutory workers' compensation obligation to compensate appellant for her injuries. Because it appears appellant has stated a prima facie cause of action based upon common law breach of the duty owed by a landowner to an invitee, we reverse.

The issue which is usually cast in terms of "dual capacity" is one we view simply as a recognition of the fact that employers may have multiple duties, some statutory and some founded in the common law, toward the persons they employ. It is only in those cases where the duty arises from the employment relationship under section 3600 that workers' compensation is the exclusive remedy. Where such a statutory duty does not exist, the employee may seek to hold responsible his or her employer based upon the existence of a duty arising independently from the employment relationship.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 14, 1994, Weinstein sustained injuries to her left foot while acting in the course and scope of her duties as an employee of the Hospital.[2] Weinstein had to use crutches due to her injury. Although still employed, she stopped working at the Hospital on November 7, 1994, and filed a workers' compensation claim. As a result of the injuries she sustained on October 14, Weinstein began drawing temporary disability and ongoing medical payments from the Hospital's workers' compensation administrator.

On January 10, 1995, while still on crutches, Weinstein went to the Hospital to receive medical treatment for her injury. After undergoing an MRI (magnetic resonance imaging) procedure on her foot, Weinstein was escorted from the MRI building to the radiology department by a medical technician employed by the Hospital. As this was happening, Weinstein slipped and fell on a watery liquid substance in one of the Hospital's hallways. The fall aggravated the previous injury to Weinstein's left foot, resulting in a condition of chronic intense pain.

On January 25, 1995, Weinstein was laid off from her job at the Hospital due to downsizing. Through Applied Risk Management, its worker's compensation carrier, the Hospital continues to pay the cost of medical treatment related to Weinstein's injuries sustained in the January 10 accident.

---

[2]Weinstein sustained the injuries while teaching a training course on professional assault response as part of her duties as the executive director of child and adolescent psychiatry at the Hospital.

On December 12, 1995, Weinstein filed her complaint in this personal injury action against the Hospital. The form pleading, labeled "premises liability," seeks compensatory damages according to proof based on the January 10, 1995, accident. The Hospital filed an answer alleging as an affirmative defense the exclusivity of Weinstein's workers' compensation remedy under sections 3600, 3601, 3602 and 5300.

On May 21, 1996, the Hospital filed a motion for summary judgment based on the sole ground that Weinstein's "exclusive remedy is her ongoing Workers' Compensation action and the instant civil action is statutorily barred under Labor Code sections 3600 and 3602." In support of the motion, the Hospital argued that Weinstein was its employee at the time of the January 10, 1995, accident, and was present at the Hospital on that date in order to receive medical treatment for a previous injury suffered in the course of her employment, for which she was receiving workers' compensation benefits. On this basis, the Hospital contended that undisputed facts established the "conditions of compensation" existed between Weinstein and the Hospital at the time of her injury, her exclusive remedy was under the workers' compensation law, and her complaint against the Hospital was therefore barred under section 3602, subdivision (a). The Hospital specifically argued that the "dual capacity" doctrine is inapplicable to a premises liability action against an employer as owner or occupier of real property.

Weinstein opposed the motion for summary judgment on the grounds of the dual capacity doctrine. She argued that at the time of the accident on January 10, 1995, the Hospital was acting in its capacity as a medical facility rendering care to her as a member of the public, and not as Weinstein's employer. Thus the "conditions of compensation" were not met, and Weinstein was not restricted to the remedy of workers' compensation. At the hearing on the motion, Weinstein argued the dual capacity exception applied because she was at the Hospital as a patient rather than as an employee, and the Hospital was acting as a medical provider and not as an employer. The Hospital countered that it owed Weinstein the same duty to maintain safe premises whether she was there as a patient or an employee. Because Weinstein's claim was based on premises liability rather than professional malpractice, the Hospital argued she could not rely on the dual capacity "exception" to the rule of workers' compensation exclusivity.

The trial court agreed with the Hospital. In its order granting the motion for summary judgment, the court stated: "[N]o triable issue of material fact exists as to the sole cause of action for premises liability against [the Hospital]. Specifically, [Weinstein] conceded that at the time of her alleged slip and fall accident on January 10, 1995, she was an employee of [the

Hospital] and was receiving workers compensation benefits related to a prior industrial injury she sustained while employed by [the Hospital]. The doctrine of dual capacity is inapplicable under Labor Code section 3602[, subdivision] (a) since the [Hospital]'s duty to provide a safe premises pre-existed the injury." The trial court entered judgment for the Hospital. This appeal followed.

## DISCUSSION

The rules governing the granting of a motion for summary judgment and appellate review thereof are well established. A defendant may move for summary judgment or summary adjudication on the grounds a cause of action has no merit, either because (1) one or more of the elements of the cause of action cannot be separately established, or (2) there is a complete affirmative defense to that cause of action. (Code Civ. Proc., § 437c, subds. (a), (n), (o)(2).) The moving party is not entitled to summary judgment unless and until it meets its procedural burden of establishing one of these grounds for granting the motion, regardless of whether the opposing party responds or presents any evidence. If the moving defendant fails to meet its initial burden, the burden never shifts to the opposing party to raise a factual issue. (Code Civ. Proc., § 437c, subd. (o)(2).) A trial court may grant summary judgment only when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) ■ We review the trial court's decision to grant or not to grant a summary judgment motion de novo. (*Villa* v. *McFerren* (1995) 35 Cal.App.4th 733, 741, 743-746 [41 Cal.Rptr.2d 719]; *FSR Brokerage, Inc.* v. *Superior Court* (1995) 35 Cal.App.4th 69, 73-75, fn. 4 [41 Cal.Rptr.2d 404]; *Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573, 579 [37 Cal.Rptr.2d 653]; *Jambazian* v. *Borden* (1994) 25 Cal.App.4th 836, 843-844 [30 Cal.Rptr.2d 768].)

■ In this case, the Hospital has never contended Weinstein could not establish all the elements of a cause of action for personal injury based upon premises liability. The sole ground on which the Hospital moved for summary judgment was the affirmative defense of the exclusivity of workers' compensation as a remedy, and it was on this basis the trial court granted the Hospital's motion. The burden was on the Hospital to establish every element of its affirmative defense. If it failed to do so, the trial court erred in granting summary judgment.

The threshold prerequisite for the remedy of workers' compensation is that the subject injury "aris[e] out of and in the course of the employment

. . . ." (§ 3600, subd. (a).)[3] In order for workers' compensation to be "the sole and exclusive remedy" of an employee against his or her employer for the employee's injury, the injury must have arisen in a case in which the "conditions of compensation concur." (§§ 3600, subd. (a), 3602, subd. (a).) Section 3600 defines the "conditions of compensation" as including the elements that, "at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment"; and "the injury is proximately caused by the employment, either with or without negligence." (§ 3600, subd. (a)(2)-(3).)[4] It is only when these essential elements "concur" that the statutory duty to compensate arises. "In all cases where the conditions of compensation set forth in Section 3600 do not concur, the liability of the employer shall be the same as if this division had not been enacted." (§ 3602, subd. (c).)[5] Moreover, under section 3852, an employee is permitted

---

[3]"This two-pronged requirement is the cornerstone of the workers' compensation system." (*Maher* v. *Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 729, 732-733 [190 Cal.Rptr. 904, 661 P.2d 1058].) As the Supreme Court explained in *Maher*, this "twofold" requirement of section 3600 dictates that, on the one hand, "the time, place, and circumstances under which the injury occurs" must be "in the course of the employment." "Thus ' "[a]n employee is in the 'course of his employment' when he does those reasonable things which his contract with his employment expressly or impliedly permits him to do." ' [Citation.] And, ipso facto, an employee acts within the course of his employment when ' "performing a duty imposed upon him by his employer and one necessary to perform before the terms of the contract [are] mutually satisfied." [Citation.]' [Citation.]" (*Maher, supra,* 33 Cal.3d at p. 733.) In addition, the statute also requires that an injury "arise out of" the employment. "It has long been settled that for an injury to 'arise out of the employment' it must 'occur by reason of a condition or incident of [the] employment . . . .' [Citation.]" (*Maher, supra,* 33 Cal.3d at pp. 733-734.)

[4]Section 3600 provides in pertinent part: "(a) Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as otherwise specifically provided in Sections 3602, 3706, and 4558, shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur:

"(1) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division.

"(2) Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment.

"(3) Where the injury is proximately caused by the employment, either with or without negligence. . . ."

[5]Section 3602 also states: "the fact that either the employee or the employer also occupied another or dual capacity *prior to, or at the time of,* the employee's *industrial injury* shall not permit the employee or his or her dependents to bring an action at law for damages against the employer." (§ 3602, subd. (a), italics added.) This limited restriction on the applicability of the exception, added by the Legislature in 1982, has the effect of limiting it to cases in which the parties' dual capacity did not exist prior to the employee's *industrial* injury, but arose only *after* the injury. (Stats. 1982, ch. 922, § 6, p. 3367; *Sturtevant* v. *County of Monterey* (1991) 228 Cal.App.3d 758, 765-766 [279 Cal.Rptr. 161] (*Sturtevant*); see *Hendy* v. *Losse* (1991) 54

to seek damages that arise from the aggravation of an industrial injury against persons other than the employer.

■   Section 3852 is the origin of the "dual capacity" exception to the exclusive remedy of workers' compensation. Under the dual capacity doctrine, an employee may recover in tort for negligent aggravation of an initial industrial injury against an employer who assumes the capacity of medical care provider by undertaking to treat the employee's injury itself. (*Duprey* v. *Shane* (1952) 39 Cal.2d 781, 793 [249 P.2d 8]; *Alander, supra,* 49 Cal.App.4th at p. 1305.) The dual capacity doctrine is not necessarily limited to situations in which the employer's alternate second capacity toward the employee is that of medical care provider. "[T]he decisive test of dual capacity is whether the nonemployer aspect of the employer's activity generates a different set of obligations by the employer toward the employee." (*D'Angona* v. *County of Los Angeles* (1980) 27 Cal.3d 661, 667 [166 Cal.Rptr. 177, 613 P.2d 238] (*D'Angona*); see also *Perry* v. *Heavenly Valley* (1985) 163 Cal.App.3d 495, 508-509 [209 Cal.Rptr. 771] (*Perry*).)

Dual capacity is thus legal shorthand for describing a situation in which a party has a duty of care that arises independently of any employment relationship. It is based on the distinction between two entirely separate sets of duties: (1) the duties of an employer to an employee arising from the existence of an employment relationship under the workers' compensation law; and (2) the common law (or other statutory) duties of care arising from other, nonemployment relationships, such as those of a medical care provider to a patient, or of a business or property owner to an invitee. (*Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d 268, 277 [179 Cal.Rptr. 30, 637 P.2d 266].) For example, an employer's duty to its employees requires it to provide, among other things, a safe place of employment. This duty is distinct from the obligation of a property owner or business to an invitee, based on the common law tort duty of care. The nature of an employer's duty in a given situation depends on the circumstances of the parties' relationship at the time of the incident. Just because a person *is* an employee clearly does not mean he or she is *acting* as an employee under all circumstances.

■   In order to bear its burden of establishing the complete affirmative defense of workers' compensation exclusivity in this case, the Hospital was

Cal.3d 723, 736, fn. 10 [1 Cal.Rptr.2d 543, 819 P.2d 1] (*Hendy*); *Alander* v. *VacaValley Hospital* (1996) 49 Cal.App.4th 1298, 1305, fn. 3 [57 Cal.Rptr.2d 40] (*Alander*).) It is inapplicable here, where there is no dispute the sole capacity occupied by the Hospital with respect to Weinstein at the time of her original industrial injury on October 14, 1994, was that of employer. The issue is whether the Hospital occupied a dual capacity with respect to Weinstein at the time of her *subsequent* injury on January 10, 1995.

required to show that, at the time of her injury on January 10, 1995, Weinstein was performing services growing out of and incidental to her employment, and was acting within the course of her employment. The fact Weinstein was an employee of the Hospital at the time of the accident is not controlling, since the nature of the Hospital's duty in this case depends not simply on whether Weinstein was an employee, but on the question whether she was acting within the course and scope of her employment at the time of her injury. Neither does the Hospital's duty to its employees to provide a safe workplace have any relevance unless all the conditions of compensation were present at the time of the subject accident.

There is no dispute that Weinstein was performing employment-related services and acting within the course and scope of her employment with the Hospital at the time of her initial accidental injury on October 14, 1994. It is also undisputed Weinstein was still an employee of the Hospital at the time of her second injury on January 10, 1995. However, the Hospital had the burden on its motion for summary judgment of establishing that when Weinstein returned for treatment on January 10, 1995, she went *in her capacity as an employee*. It failed to do so. There was no evidence suggesting that any of Weinstein's actions during her visit to the Hospital on that date were within the course and scope of her employment with the Hospital, that she was performing any service growing out of or incidental to her employment, or that she was even working at all. In short, the Hospital did not bear its burden as the defendant moving for summary judgment of establishing that the "conditions of compensation" set out in section 3600, subdivision (a)(2) "concur[red]" in this case.

The leading case is *Duprey v. Shane, supra*, 39 Cal.2d 781. In *Duprey*, a nurse employed by a chiropractic medical partnership was injured in the course of her employment. She was treated by two doctors: one an employee of the partnership, and the other a partner. Even though the employee recovered workers' compensation benefits for the original injury, a unanimous California Supreme Court held that she could bring an action at law against the partnership, the partners, and both doctors who had treated her, for aggravation of her industrial injuries by negligent medical treatment. The court reasoned that the treating doctor bore two relationships toward the plaintiff—one as her employer, and the other as her doctor. As her employer, he was under a duty to provide compensation for her injuries, but had no obligation to treat her personally. Once he undertook to do so, there was no logical reason why he should not be responsible in a civil action for his negligent acts in treating the injury. (*Duprey, supra,* 39 Cal.2d at pp. 790-794.)

The *Duprey* court stated: " 'In treating the injury [the employer] did not do so because of the employer-employee relationship, but did so as an attending

doctor, and his relationship to [the plaintiff] was that of doctor and patient. [¶] . . . It is true that the law is opposed to the creation of a dual personality, where to do so is unrealistic and purely legalistic. But where, as here, it is perfectly apparent that the person involved . . . bore towards his employee two relationships—that of employer and that of a doctor—there should be no hesitancy in recognizing this fact as a fact." (*Duprey* v. *Shane, supra,* 39 Cal.2d at p. 793.) The court refused to apply the worker's compensation exclusivity doctrine to bar the plaintiff's action "to recover for liabilities which, although they may be in some indirect way connected with an employer-employee relationship, do not arise out of, or depend upon it . . . ." (*Id.* at p. 794.)

The Supreme Court subsequently followed *Duprey* in *D'Angona, supra,* 27 Cal.3d 661. In *D'Angona,* the plaintiff contracted a disease in the course of her employment with a hospital operated by the defendant County of Los Angeles, and was treated for the disease at the hospital. She filed for workers' compensation benefits for her illness, alleging she had suffered injuries by virtue of her exposure to infection on the job. After receiving the workers' compensation benefits, she filed an action for damages against the county, alleging the hospital doctors had negligently diagnosed and treated her, aggravating the injuries she suffered from the disease. (*Id.* at p. 664.) The trial court dismissed the action for lack of jurisdiction under the workers' compensation law. Concluding that the doctrine of dual capacity applied, the Supreme Court reversed.[6]

The *D'Angona* court specifically addressed the distinction between the duty owed by an employer to its employee, and the separate common law duty the same employer assumes when it undertakes to provide medical care to the employee as a member of the public. "In treating plaintiff's disease the county owed her a duty separate and distinct from its duty as her employer,

---

[6] In language clearly applicable to the instant case, the *D'Angona* court reasoned: "Underlying *Duprey* is the rationale that if any injury arises from a relationship which is distinct from that of employer and employee and invokes a different set of obligations than the employer's duties to its employee, there is no justification for shielding the employer from liability at common law.

". . . [T]he decisive test of dual capacity is whether the nonemployer aspect of the employer's activity generates a different set of obligations by the employer toward the employee. Thus, since a doctor's obligation toward his patient arises because he undertakes to render medical treatment, if he treats an employee rather than paying another for treatment he should be liable as a doctor rather than as an employer. [Citation.] . . .

"The relationship between a county which operates a public hospital and its patients clearly involves a different set of obligations from the hospital's obligations toward its employees. Paraphrasing *Duprey,* it may be said that in treating plaintiff's injuries the hospital did not act in its capacity as employer but as a hospital, and since it assumed the obligations of a hospital to a patient it should be liable in that capacity rather than as an employer for the aggravation of plaintiff's injury." (*D'Angona, supra,* 27 Cal.3d at pp. 666-667.)

and this was the duty to provide medical care free of negligence—the same duty that it owes to any member of the public who becomes a patient at its hospital. The fact that the county allegedly breached this obligation by employing negligent doctors rather than by some other purportedly negligent act did not absolve it of its responsibility to assure that the medical care which it directly undertook to provide was performed without negligence." (*D'Angona, supra,* 27 Cal.3d at p. 669.) Similarly, the Hospital in the instant case owed the same duties to Weinstein it owed any patient: a duty not only to exercise due care in treating the patient, but also to exercise reasonable care, as owner of the premises, in the maintenance of those premises in order to avoid exposing persons to an unreasonable risk of harm.[7]

More recently, in *Sturtevant, supra,* 228 Cal.App.3d 758, a county hospital employee was injured by a fall while in the course of her employment. She immediately sought treatment at the hospital, and received treatment and surgery from a doctor also employed by the hospital. Thereafter, she filed a workers' compensation claim against the hospital and received disability payments and compensation for medical expenses. Later, she filed a medical malpractice action against the county, the hospital and the doctor. The trial court granted summary judgment on the ground workers' compensation was the employee's exclusive remedy. The Court of Appeal reversed, based on the dual capacity doctrine. At issue was the 1982 amendment to section 3602, subdivision (a). The Court of Appeal held this amendment prohibits a common law tort action only when the dual capacity exists prior to, or at the time of, the employee's initial industrial injury. By contrast, where the employer's capacity as the employee's medical provider did not exist until *after* the employee had sustained the industrial injury, the employee could continue to bring a separate tort action at common law against the employer for negligence. (*Sturtevant, supra,* 228 Cal.App.3d at pp. 761-770.)[8]

In each of these three cases, then, as in Weinstein's case, an employee suffered an initial injury on the job for which she received workers' compensation; thereafter sought treatment for that industrial injury from a medical provider who also happened to be her employer; and subsequently filed

---

[7]Even though Weinstein's form complaint framed her pleadings in terms of "premises liability," the facts alleged in support of the complaint also suggest possible negligence on the part of the medical technician who was escorting Weinstein at the time of her accident.

[8]In language directly applicable here, the court stated: "[W]hen plaintiff fell and injured her right wrist, hand, and knee, defendants' relationship to her was solely that of employer to employee. Later, when the [hospital] admitted her as a patient, defendants assumed the added duties of a medical care provider. Thereafter, defendants allegedly breached those duties by providing negligent medical care. Since defendants' dual capacity did not exist 'prior to, or at the time of, the employee's industrial injury' (§ 3602, subd. (a)), but only *after* her injury, the specific limitation on the scope of the dual capacity doctrine in subdivision (a) of section 3602 does not apply, and, under *Duprey* and *D'Angona* plaintiff properly may sue defendants for their alleged medical malpractice." (*Sturtevant, supra,* 228 Cal.App.3d at pp. 765-766; see *Hendy, supra,* 54 Cal.3d at p. 736, fn. 10.)

a civil action against the medical provider when the provider's negligence aggravated her injury. As in *Duprey*, *D'Angona* and *Sturtevant*, Weinstein has presented evidence that she went to the Hospital on January 10, 1995, in the capacity of a patient for the purpose of medical treatment, and that the Hospital treated her in its capacity as a medical care provider. The Hospital has not established that Weinstein went there on that date in her capacity as an employee of the Hospital, or that she had any obligation to seek treatment at the Hospital rather than elsewhere. Neither has the Hospital presented any evidence that it maintained a special clinic for its employees, had any contractual obligation to treat Weinstein's injuries, or treated her in the capacity of her employer on that date. Weinstein's need for protection from the negligence of medical providers is as great as that of any other patient, and the occurrence of her injury on January 10, 1995, was not made more likely by the fact of her employment. (*D'Angona*, *supra*, 27 Cal.3d at pp. 667-668 & fn. 6.) The Hospital owed Weinstein the same duty of care which it owed any other patient who came onto its premises for the purpose of medical treatment. "[I]n treating [Weinstein's] injuries the [H]ospital did not act in its capacity as employer but *as* a hospital, and since it assumed the obligations of a hospital to a patient it should be liable in that capacity rather than as an employer for the aggravation of [Weinstein's] injury." (*D'Angona* at p. 667, italics added.)

This case is factually distinguishable from the line of cases in which an employee obtains medical treatment from the employer as a condition of employment or under circumstances incidental to the employment relationship. The distinction is most obvious in *Maher* v. *Workers' Comp. Appeals Bd.*, *supra*, 33 Cal.3d 729. In *Maher*, the employee's injury occurred in the course of treatment for tuberculosis which the employer hospital *required* her to undergo as a *condition* of her continued employment. (*Id.* at pp. 731-732.) Quite simply, it was the employee's *duty*, as a condition of her employment, to obtain the treatment which caused the injury. Thus, the employee's injury clearly arose out of the employment relationship and occurred in the course and scope of the employee's employment.

In *Bell* v. *Macy's California* (1989) 212 Cal.App.3d 1442 [261 Cal.Rptr. 447] (*Bell*), the nonhospital employer had, as part of its contractual employment relationship with its employees, undertaken the responsibility of providing a first-aid dispensary and clinic to provide medical treatment for its employees as one of the conditions of the employment relationship. The employee's injury occurred as a result of treatment at the first-aid clinic. The Court of Appeal held that in providing a medical clinic for its employees, the employer never stepped out of its role as an employer and into that of a medical care provider, even though the employer also made its first-aid

clinic available to the general public. Because the employee attended the clinic as an employee and not as a member of the public, the dual capacity exception did not apply. (*Id.* at pp. 1450-1451.) Once again, the employee's injury arose out of the employment relationship and occurred in the course of employment.

Similarly, in *Alander, supra,* 49 Cal.App.4th 1298, the hospital employer imposed upon itself, as part of its own employment protocol, an obligation personally to provide testing and treatment to any employee suffering a possible exposure to tainted blood or bodily fluids. In electing to receive treatment at the employer hospital, the employee was asserting a right specifically given to her *as an employee* as one of the benefits of her employment. And in personally treating her, the employer was fulfilling its contractual obligation under the employment protocol *as an employer,* and not as a medical care provider. (*Id.* at pp. 1306-1307.)

In each of these cases, the employee's treatment by the employer occurred in the context of an employment-related duty to provide medical treatment to the employee as one of the benefits of employment. Either the employee was required to obtain the subject treatment from the employer as one of the direct benefits of employment, as in *Maher*; or the employer itself had undertaken to provide medical treatment as one of *its* employment obligations, as in *Bell* and *Alander*. In contrast, the employers in *Duprey, D'Angona* and *Sturtevant* accepted no obligation to personally treat their employees; rather, they treated them as they would any other members of the public. (*Duprey* v. *Shane, supra,* 39 Cal.2d at p. 793; *D'Angona, supra,* 27 Cal.3d at pp. 663-664; *Sturtevant, supra,* 228 Cal.App.3d at p. 761; cf. *Alander, supra,* 49 Cal.App.4th at p. 1306; *Bell, supra,* 212 Cal.App.3d at pp. 1450-1451.) Similarly, in our case the Hospital never undertook any contractual *duty* to treat its employees in general or Weinstein in particular, and it did not require Weinstein to obtain treatment from it as a condition of her employment. Weinstein elected to obtain treatment at the Hospital not as part of any contractual benefit of her employment relationship with the Hospital, but as an ordinary patient; and the Hospital treated her as such.

The key distinguishing element is the distinction between an employer's duty to its employees arising from its contractual obligation as employer, and the common law duty of care of a business or property owner to an invitee. As an employer, the Hospital had a duty to provide compensation for Weinstein's injuries, but was under no duty or obligation to treat her personally. (*D'Angona, supra,* 27 Cal.3d at p. 665; *Duprey* v. *Shane, supra,* 39 Cal.2d at p. 793.) It is only when an employer imposes a contractual duty on the employee to obtain treatment from it, or itself undertakes a duty to

provide such treatment as one of the direct benefits of employment, that any medical treatment it provides to the employee become a part of the employer-employee relationship. Where, as in this case, the employer simply accepts the employee as a patient and provides medical treatment separate from any of the conditions, obligations or benefits of employment, it acts in a different capacity toward the employee than that of employer.

This duty logically encompasses not only a professional duty of care in the provision of medical treatment, but a general duty of care to provide safe premises independent of any duty arising from the employment relationship. The Hospital insists that the dual capacity doctrine does not apply to a case alleging premises liability rather than professional medical malpractice. In support of this contention, it cites *Blew* v. *Horner* (1986) 187 Cal.App.3d 1380 [232 Cal.Rptr. 660] (*Blew*) and *Royster* v. *Montanez* (1982) 134 Cal.App.3d 362 [184 Cal.Rptr. 560] (*Royster*). Both of these cases are distinguishable from the instant case.

In *Royster*, the plaintiff employee was injured while leaving her employer's mobilehome, where she had gone for work-related purposes. She attempted to invoke the dual capacity doctrine by arguing the defendant employer had "concurrent roles as employer and occupier of land." (*Royster*, *supra*, 134 Cal.App.3d at p. 366.) The appellate court rejected this argument on the ground the employer's capacity as an occupier of land was a normal and usual incident of being her employer and of the employment relationship. The key factor in *Royster* is that the injury occurred while the employee was actually engaged in performing employment-related duties at a time when the employer was acting concurrently as both employer and occupier of land. The conditions of compensation clearly existed under the circumstances of the parties' relationship at the time of the injury in *Royster*.

In *Blew*, the plaintiff employee was injured while performing roofing work during his employment by a construction company. He sought to invoke the dual capacity doctrine by alleging the defendant employer was also the owner/developer of the project, and as such owed a separate duty to manage the property in a way so as to avoid harm to others. The Court of Appeal held that the dual capacity doctrine was not applicable when the defendant employer held the "concurrent role" of employer and owner or occupier of land. (*Blew*, *supra*, 187 Cal.App.3d at pp. 1391-1392.) Once again, the key factor in the case was that the injury occurred while the employee was engaged in the normal performance of work-related duties as an employee, at a time when the employer was acting simultaneously as both employer and property owner.

*Royster* and *Blew* are clearly distinguishable from the instant case. Both *Royster* and *Blew* involved situations in which the injury occurred at a time

when the employee was performing his or her job and was clearly acting in the course and scope of employment. The fact that the employer was *concurrently* the owner or occupier of land on which the injury occurred was therefore immaterial. There was a *single employment-related transaction*, which happened to take place at a time when the employer occupied the dual capacities of employer and owner or occupier of land with respect to the employee. This is the precise situation in which the 1982 amendment to section 3602, subdivision (a) bars the use of the dual capacity doctrine—where "either the employee or the employer also occupied another or dual capacity *prior to, or at the time of,* the employee's industrial injury . . . ." (§ 3602, subd. (a), italics added.)

In this case, on the other hand, the subject injury did not take place while Weinstein was performing work-related duties. It occurred *after* the initial industrial injury, when she had come to the Hospital for the sole purpose of receiving medical treatment. Her relationship with the Hospital at that point was that of patient and care giver, and had no connection to any employment-related duties or obligations on the part of either herself or the Hospital itself. Thus, the subject injury in this case was a second, entirely separate transaction from the initial industrial injury, and took place at a time when the controlling relationship between the Hospital and Weinstein was that of landowner and invitee, *not* that of employer and employee. (*D'Angona, supra,* 27 Cal.3d at pp. 667-669.)

The critical issue in each case is whether the conditions of compensation concurred at the time of the subject injury; specifically, whether the employee was acting in the course of employment and in his or her capacity as an employee at the time when the tort sued upon was committed. (*Perry, supra,* 163 Cal.App.3d at pp. 508-509 [plaintiff employed as ski coach at defendant employer's ski resort injured by ski bindings negligently mounted at defendant's ski rental and repair shop, to which plaintiff employee went as a member of the general public].) In this case, Weinstein established a prima facie cause of action for general negligence by alleging that she came onto the Hospital's premises, encountered a hazardous condition there, and injured herself as a result. Because she clearly alleged sufficient facts to establish a prima facie case based on common law tort duty, the Hospital chose to argue the affirmative defense of workers' compensation exclusivity. Consequently it was the Hospital's procedural burden, on moving for summary judgment, to establish every element of this complete defense. It failed to do so, because it did not establish the concurrence of the conditions of compensation set forth in section 3600, subdivision (a)(2). The trial court granted summary judgment on the grounds the Hospital had established the affirmative defense of the exclusivity of the workers' compensation remedy. In so doing, it erred.

## Disposition

The judgment is reversed.

Costs on appeal are awarded to appellant.

Phelan, P. J., and Parrilli, J., concurred.